**Elmer J. JONNET and Joseph E. Jonnet, Appellants,**

v.

**STATE of Texas, Appellee.**

**No. 3–93–101–CV.**

Court of Appeals of Texas, Austin.

June 8, 1994.

Rehearing Overruled June 29, 1994.

William L. Smith, Jr., Denton, for appellants.

Dan Morales, Atty. Gen., Joe Foy, Jr., Asst. Atty. Gen., Austin, for appellee.

Before POWERS, JONES and KIDD, JJ.

KIDD, Justice.

The State of Texas brought suit against Brent Ranch Operating, Inc. ("BRO"), Elmer J. Jonnet, and Joseph E. Jonnet to collect an administrative penalty the Texas Railroad Commission ("the Commission") assessed against BRO for failure to plug abandoned oil wells in accordance with Statewide Rule 14. 16 Tex.Admin.Code § 3.14 (1993) (hereinafter "Rule 14").[1] The State sought to recover from the Jonnets individually based on section 171.255(a) of the Tax Code. Tex.Tax Code Ann. § 171.255(a) (West 1993). After a bench trial, the district court rendered a final judgment finding the defendants jointly and severally liable for the administrative penalty, a civil penalty for failure to pay the administrative penalty, attorney's fees, and court costs. The Jonnets alone appeal. We will affirm the judgment of the district court.

## THE CONTROVERSY

Central to this appeal is the construction and application of section 171.255(a) of the Tax Code, which provides:

> If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is *created or incurred* in this state *after the date* on which the report, tax, or penalty is due and before the corporate privileges are revived. The liability includes liability for any tax or penalty imposed by this chapter on the corporation that becomes due and payable after the date of the forfeiture.

Tex.Tax Code Ann. § 171.255(a) (West 1993) (emphasis added). The background facts that gave rise to the Jonnets' liability are as follows.

On December 1, 1985, BRO became the operator of record of fourteen oil wells on two separate leases in Carson County, Texas. The oil wells already had become dry or inactive prior to this date. The Natural Resources Code requires that inactive oil wells be plugged in accordance with Rule 14. *See* Tex.Nat.Res.Code Ann. § 89.011 (West Supp. 1994) & § 89.012 (West 1993). BRO's wells were not in compliance with Rule 14 from on or before December 1, 1985 until August 2, 1990.

The forfeiture of BRO's corporate privileges resulted from BRO's failure to file a franchise tax report. In March 1989, BRO had filed a franchise tax public information report and a franchise tax report listing the Jonnets as officers and directors of BRO. The franchise tax report form covered the tax period from May 1, 1989 through April 30, 1990. However, BRO failed to file its next franchise tax report, due on March 15, 1990. This failure resulted in the forfeiture of BRO's right to do business on June 14, 1990, and ultimately the forfeiture of BRO's corporate charter on December 10, 1990.

On December 27, 1989, the Commission sent a warning letter to BRO stating that its oil leases were not in compliance with Rule

---

1. The Commission has the authority to assess penalties for violations of its rules or orders that pertain to the prevention or control of pollution. Tex.Nat.Res.Code Ann. § 81.0531 (West 1993).

14 and that the Commission was recommending legal action. The letter warned that once legal action was initiated, the Commission would likely assess an administrative penalty. The letter went on to state that this would be BRO's last opportunity to bring the leases into compliance without incurring a penalty.

BRO failed to bring its leases into compliance with Rule 14, so the Commission began administrative proceedings against BRO, holding a hearing on October 18, 1990. *See* Tex.Nat.Res.Code Ann. §§ 81.0531–.0532, 85.381 (West 1993). The Jonnets were not joined individually in the Commission's proceedings. On December 3, 1990, the Commission issued an order assessing a penalty of $28,000 against BRO for the two leases. The order required that within thirty days of the order becoming final, BRO either remit an administrative penalty in the amount of $28,000, establish an escrow account, or post a supersedeas bond with the Commission in the amount of the penalty pursuant to section 81.0533 of the Natural Resources Code. Tex.Nat.Res.Code Ann. § 81.0533 (West 1993).

BRO did not comply with the order and, as a result, the State brought suit against BRO and the Jonnets individually to collect the initial penalty of $28,000, additional civil penalties for failure to pay the $28,000, attorney's fees, and court costs. The State asserted that the Jonnets were jointly and severally liable for BRO's debt pursuant to section 171.255(a). The Jonnets filed answers in the collection suit, but did not file verified pleadings denying liability in their individual capacities.

To establish the liability of the Jonnets, the State relied on section 171.255(a), which provides that officers and directors are liable for the debts of a corporation that are *created or incurred* after a failure to pay franchise taxes, when that failure leads to the forfeiture of corporate privileges. Tex.Tax Code Ann. § 171.255(a) (West 1993). The State contended that because BRO failed to file its franchise tax report on March 15, 1990, resulting in forfeiture of its corporate privileges, the Jonnets were liable for the penalty assessed in the final order of the Commission dated December 3, 1990 because the penalty

was a debt created or incurred after March 15, 1990.

The Jonnets responded that they were not liable under section 171.255(a) because the penalty in the final order was not a debt created or incurred after March 15, 1990. They argued that the debt related back to the date of BRO's initial noncompliance with Rule 14 on or before December 1, 1985. Thus, the central issue before the district court regarding the Jonnets' individual liability under section 171.255(a) was on what date the debt imposed by the Commission's final order was created or incurred.

The district court rejected the Jonnets' position and accordingly rendered judgment against BRO and the Jonnets, jointly and severally, for $48,000 in administrative and civil penalties, $2,550 in attorney's fees, and court costs. The Jonnets appeal, raising three points of error. First, the Jonnets contend that the district court erred in finding that the penalty was a debt which was "created or incurred," as those terms are used in section 171.255(a), after the date BRO's franchise tax report became delinquent. Second, the Jonnets argue that there is no evidence that they were officers and directors when the penalty or debt was created and incurred. Third, the Jonnets argue that the district court erred by determining that the Jonnets had waived any complaint that they were not individually liable by failing to file a verified pleading.

## DISCUSSION

In their first point of error, the Jonnets contend that the district court erred in concluding that BRO's indebtedness for the penalties assessed under the Commission's final order was a debt "created or incurred" for purposes of section 171.255(a) after March 15, 1990, the date on which BRO's franchise tax report was due, but not filed. The Jonnets argue that the debt was created or incurred not when the Commission issued its order, but on or before December 1, 1985, when BRO first began violating Rule 14.

Under section 171.255(a), officers and directors lose the protection from liability provided by the corporate form after the date

when taxes, penalties, or tax reports are delinquent and result in forfeiture of corporate privileges. Officers and directors remain without protection from liability until corporate privileges are revived. Each officer and director is individually liable for corporate debts "created or incurred" in the interim.

■ BRO began violating Rule 14 on or about December 1, 1985, when the corporation failed to plug the abandoned oil wells on its property. BRO then *continued* to violate Rule 14 for nearly four years, until August 2, 1990; the Commission issued its order assessing a penalty for BRO's continued violation over this period of time. We hold that BRO's debt for the penalty assessed by the Commission was "created or incurred" by the Commission order of December 3, 1990 directing BRO to pay the administrative penalty. On March 15, 1990, BRO's franchise taxes were due, but not paid, which later resulted in the forfeiture of BRO's corporate privileges. Because the Commission's order was issued after the date BRO's franchise taxes were due, the Jonnets, as officers and directors of BRO, are individually liable for the penalties assessed by the Commission.

The Jonnets, however, cite us to cases involving debts based on written instruments, where the debts arising from breach of the instruments were held to relate back to the date of the instrument. For example, in *Curry Auto Leasing, Inc. v. Byrd,* 683 S.W.2d 109 (Tex.App.—Dallas 1984, no writ), an automobile lessor sought to recover expenses stemming from the corporate lessee's breach of the rental agreement. While the lessor suffered losses after the event that caused the lessee's loss of corporate privileges, the rental agreement itself predated the event. Accordingly, because the debts were authorized by the rental agreement, "[t]he items in question, as debts of the corporation, relate back to [the] promise to pay made in the rental contract." *Id.* at 112. Courts have followed the reasoning of *Curry* in other cases where the debts arose from breach of agreements reflected by written instruments that predate the delinquency resulting in forfeiture of corporate privileges. *See McKinney v. Anderson,* 734 S.W.2d 173,

174–75 (Tex.App.—Houston [1st Dist.] 1987, no writ) (damages from breach of equipment lease agreement relate back to execution of lease); *River Oaks Shopping Ctr. v. Pagan,* 712 S.W.2d 190 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (damages arising from breach of real estate agreement relate back to execution of lease); *Rogers v. Adler,* 696 S.W.2d 674, 677 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (contract and tort claims both relating to contract related back to date of contract).

Based on the foregoing case authority, the Jonnets contend that BRO's debt should likewise "relate back" to the date when BRO first failed to comply with Rule 14. However, these cases are distinguishable from the present case. Here, the State is not seeking to recover damages arising from a post-forfeiture breach of an existing agreement. Rather, the State seeks to recover a penalty assessed against the corporation by the Commission pursuant to its statutory authority under section 81.0531 of the Natural Resources Code, which provides:

(a) If a person violates provisions of this title which pertain to safety or the prevention or control of pollution or the provisions of a rule, order, license, permit, or certificate which pertain to safety or the prevention or control of pollution and are issued under this title, the person *may* be assessed a civil penalty by the commission.

(b) The penalty may not exceed $10,000 a day for each violation. Each day a violation *continues* may be considered *a separate violation* for purposes of penalty assessments.

(c) In determining the amount of the penalty, the commission shall consider the permittee's history of previous violations, the seriousness of the violation, any hazard to the health or safety of the public, and the demonstrated good faith of the person charged.

Tex.Nat.Res.Code Ann. § 81.0531 (West 1993) (emphasis added). Under section 81.0531(a), the Commission *may* or *may not* assess penalties for violations of its rules, among them Rule 14. Thus, unlike situations in which the execution of a written instru-

ment or a specific transaction creates an obligation or duty to pay for a later breach of the agreement, the obligation to pay the statutory penalty *only arises* if and when a penalty is actually assessed.

While we reject the Jonnets' "relation back" argument, we note that it would not help the Jonnets avoid individual liability for the administrative penalties even if we were to accept it. Section 81.0531(b) of the Natural Resources Code, quoted above, states that each day of a continuing violation constitutes a separate violation. Tex.Nat.Res. Code Ann. § 81.0531(b) (West 1993). Accordingly, the penalties assessed by the Commission were based not just on BRO's initial violation of Rule 14 on December 1, 1985, but on BRO's *ongoing* violation of Rule 14, which continued day after day for nearly four years. Unlike the relation-back cases cited above in which the debt can be said to relate back to a single date—the date of the written instrument—the conduct underlying the Commission's order is of a continuous nature, with no *single* date to which the penalty can relate back.

We thus rest our holding on the statutory language that creates the debt, as we did in *Wilburn v. State,* 824 S.W.2d 755 (Tex. App.—Austin 1992, no writ). In *Wilburn,* we held that the corporation's debt for unpaid unemployment compensation fund contributions was created or incurred on the date that wages were paid to the employees. We rejected arguments that the debt was created or incurred either on the date when the unemployment contributions were due, or on a daily basis. *Wilburn,* 824 S.W.2d at 764. We so held based on the provision of the Texas Unemployment Compensation Act that makes employers liable only for wages actually paid. *Id.* at 763–64. In contrast, the Natural Resources Code specifically states that "[e]ach day a violation continues may be considered a separate violation for purposes of penalty assessments." Tex.Nat.Res.Code Ann. § 81.0531 (West 1993). Since BRO had not brought its wells into compliance with Rule 14 by March 15, 1990, the date of BRO's tax delinquency, each day after that date constituted a separate violation. The Jonnets' first point of error is overruled.

In their second point of error, the Jonnets argue that the district court erred in finding that the Jonnets were officers and directors of BRO "at all times relevant to this cause of action," and particularly at the time the indebtedness at issue was created or incurred, because there is no evidence to support such a finding. The 1989 franchise tax report filed by BRO is part of the record. The report was effective for the period from May 1, 1989 through April 30, 1990, and reflected that "E.J. Jonnet" was the president and a director of BRO, and that "Joseph Jonnet" was the vice president, secretary, treasurer, and a director of BRO. Furthermore, the record contains a copy of Railroad Commission form P–5, an operator's organization report that lists "Elmer J. Jonnet" as the president of BRO and "Joseph E. Jonnet" as BRO's vice president, secretary, and treasurer. The P–5 form must be amended immediately if there are substantive changes, such as the resignation or retirement of officers. If no new officers are named, it is presumed that the old officers continue. *See* 16 Tex.Admin.Code § 3.1 (1993). Since the Jonnets produced no evidence that they resigned or were otherwise removed as corporate officers or directors of BRO, the only evidence in the record indicates that the Jonnets were officers and directors when the Commission issued its order. The Jonnets' second point of error is overruled.

In their third point of error, the Jonnets contend that the district court erred in concluding that they waived any complaint that they were not liable in their individual capacities for BRO's debts by failing to file a verified pleading on the issue. We need not reach this issue because we agree with the district court's finding that the Jonnets are liable in their individual capacities under section 171.255(a), irrespective of any pleading deficiencies.

## CONCLUSION

We affirm the judgment of the district court.

POWERS, Justice, concurring.

I concur in the judgment that the Jonnets are personally liable under section 171.255(a)

of the Tax Code for the corporate debt of Brent Ranch Operating, Inc., upon which the State sued. *See* Tex.Tax Code Ann. § 171.-255(a) (West 1992). I have, however, a different view of the statute and the circumstances.

The issue is whether the corporation incurred the "debt" before or after March 15, 1990, the due date of the franchise-tax report the corporation failed to file. If the "debt" existed before that date, the Jonnets are not personally liable; if the "debt" came into existence after that date, they are personally liable under section 171.255(a). One must initially inquire, then, as to the legislature's intended meaning of the word "debt."

In ordinary usage, the word "debt" can mean anything from an obligation arising out of sin, to a social obligation, to a money obligation due and payable. In legal usage, however, the word "debt" carries a narrower, restricted, and technical meaning. The word "debt" means a *liquidated* money obligation that is legally enforceable. *See Seay v. Hall,* 677 S.W.2d 19, 23 (Tex.1984); 26 C.J.S. *Debt* 6 (1956).[1] In using the word "debt" in section 171.255(a), did the legislature intend the meaning of the term in ordinary usage or in legal usage? "Absent legislative intent to the contrary, or other evidence of a different meaning, legal terms in a statute are presumed to have been used in their *legal* sense." 2A Sands, *Sutherland Statutory Construction* § 47.30, at 262 (1992) (emphasis added); *First Nat'l Bank of Mineola v. Farmers & Merchants State Bank,* 417 S.W.2d 317, 329 (Tex.Civ.App.—Tyler 1967, writ ref'd n.r.e.). Indeed, it would appear

quite unusual if the legislature had intended otherwise when the word "debt" is found in a revenue statute. In all events, we find that the word "debt" must be confined to its narrow, restricted, and technical or legal sense because the statute and its operation are "penal in nature."

Section 171.255(a) was preceded by another statute that also made corporate officers and directors personally liable for "debts" that were "created" by the corporation after loss of its corporate privileges. The court construed and applied the statutory language in *Schwab v. Schlumberger Well Surveying Corp.,* 145 Tex. 379, 198 S.W.2d 79 (1946). There, the corporation accumulated a corporate money obligation on open account—an obviously liquidated sum and therefore a "debt" both in the legal sense and in ordinary usage. Unable to pay its account when due, the corporation executed and delivered to its creditor the corporation's promissory note. Unable afterwards to pay the note, the corporation gave its creditor a series of six consecutive renewal notes, the last of which was executed and delivered after forfeiture of corporate privileges. The creditor sued on the last renewal note, contending the officers and directors were personally liable under the statute because the note was a debt created after forfeiture.

The court held against such liability, reasoning as follows: The statute was "penal in nature" and "must be *strictly construed* and [not] extended beyond the clear import of [its] *literal* language." *Schwab,* 198 S.W.2d at 81 (emphasis added). The word "created" means literally to "bring into existence."

---

1. This is presumptively the meaning intended by legislature in its use of the word "debt" in section 171.255(a) of the Tax Code, a section within Chapter 171 covering the franchise tax.

The idea that "debt" referred to a liquidated sum was augmented considerably in 1987 when the legislature amended Chapter 171 to add the following definition:

§ 171.109. Surplus
(a) *In this chapter:*

\*    \*    \*    \*    \*    \*

(3) "Debt" means any legally enforceable obligation measured in a *certain amount of money* which must be performed or paid within an ascertainable period of time or on demand.

(Emphasis added). Although section 171.109 is entitled "Surplus," this does not mean that the definition of "debt" is limited to the calculation of corporate surplus according to the formula set out subsequently in the section. Subsection (a) declares expressly and literally that the definition applies throughout "this chapter," not "this section." If one is tempted to construe differently the scope of the definition's applicability, then one must give weighty reasons for doing so in the face of the literal language and the presumption that the legislature intends the same words to have the same meaning throughout the statutory scheme. *See Fox v. Burgess,* 157 Tex. 292, 302 S.W.2d 405, 407 (1957); *Hufstedler v. Harral,* 54 S.W.2d 353, 355 (Tex.Civ.App.—Amarillo 1932, writ ref'd). No such reasons suggest themselves.

The debt first came into existence as a money obligation owing on open account at a time well before forfeiture. The creditor failed to prove that any of the promissory notes were given and accepted in *novation* of the open-account obligation so as to create a new debt. The mere renewal of the notes, even if the last occurred after forfeiture, did not create a new debt because under the common law of bills and notes

> the renewal merely operates as an extension of time to pay the *original* indebtedness. The debt ... *remains the same;* it is in substance and in fact the same indebtedness evidenced by a new promise.

*Id.,* at 82 (open account). Since the statute imposed personal liability "only for *debts contracted* after the forfeiture of the right to do business, [it can have] no application to the *renewal* of obligations arising prior thereto." *Id.,* 198 S.W.2d at 81 (emphasis added).

The decision in *Curry Auto Leasing, Inc. v. Byrd,* 683 S.W.2d 109 (Tex.App.—Dallas 1984, no writ) applied section 171.255(a) in light of *Schwab.* In *Curry,* the corporation terminated its lease contract before forfeiture. Under the contract, however, *whether* the corporation owed the lessor any sum of money could not be determined until the lessor sold the leased property. This did not occur until after forfeiture; thus the fact of the amount of the corporation's obligation was not ascertainable until after forfeiture. Citing the rule of "strict construction" laid down in *Schwab,* the court in *Curry* conceded the word "create" meant "to bring into existence something which did not exist." Faced then with the fact that no "debt" existed before forfeiture, under the rule of "strict construction," *Curry* nevertheless held against personal liability on the following basis:

> When parties enter into a contract the law presumes they intend the consequences of its performance. It follows that performance or implementation of the contractual provisions *relate back* to and are authorized at the time of execution of the contract.

*Curry,* 683 S.W.2d at 112 (citation omitted) (emphasis added). The *Curry* court believed the relation-back doctrine was within the "strict construction" rule of *Schwab* but was careful to note that its application was "limited by the facts of this case." *Id.*

Other decisions have followed *Curry* and *Schwab* with almost no real discussion of the "strict construction" rule and the relation-back doctrine. In each of these cases, the corporation had breached its contract before forfeiture but the resulting damages remained unliquidated until after forfeiture of corporate privileges. *See McKinney v. Anderson,* 734 S.W.2d 173 (Tex.App.—Houston [1st Dist.] 1987, no writ); *River Oaks Shopping Ctr. v. Pagan,* 712 S.W.2d 190 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Rogers v. Adler,* 696 S.W.2d 674 (Tex.App.—Dallas App.1985, writ ref'd n.r.e.).[2] A chief feature of these decisions, as in *Curry,* is their *assumption* that the word "debt" carries its narrow, restricted technical or legal meaning of a liquidated money obligation that is legally enforceable. Although personal liability arises under that meaning, the decisions reach the opposite result by applying the relation-back doctrine. Unless that assumption is operative, the relation-back doctrine is meaningless.

Thus, the relevant decisions turn upon the "strict construction" rule of *Schwab* and the relation-back doctrine of *Curry.* I believe the rule and the doctrine require more careful consideration than they have received before in this context. They are sophisticated judicial instruments; they have a history and a specific meaning; they have a purpose. They are not mere incantations delivered by a court in rejecting a claim of personal liability under section 171.255(a).

### The Relation–Back Doctrine

The relation-back doctrine holds that an act done at one time is considered to have been done at an earlier time for the purposes of the case before the court. Like all such fictions, it enables the court to arrive at

---

**2.** *Curry, Adler, Pagan,* and *McKinney* appear to have been decided before the effective date of the

1987 amendment discussed in note 1, *supra.*

conclusions that will effectuate justice while maintaining simultaneously the appearance of logical consistency. The doctrine originated in equity but courts now apply it in any number of circumstances when it is necessary to effectuate justice.[3] It has nothing to do, of course, with the common-law rule of *Schwab* that a promissory note is not itself a debt but merely evidence of a debt.

Broadly speaking, the relation-back doctrine may be applied to give effect to the parties' lawful intentions, preserve rights that would otherwise be lost, or afford a remedy where none would otherwise exist. *See Brandon v. Claxton,* 30 S.W.2d 679, 680–81 (Tex.Civ.App.—Dallas 1930), *aff'd,* 121 Tex. 184, 47 S.W.2d 263 (1932). The *Curry* court applied the doctrine for the first such purpose:

> When parties enter into a contract the law presumes they intend the consequences of its performance. It follows that performance or implementation of the contractual provisions *relate back* to and are *authorized* at the time of execution of the contract.

*Curry,* 683 S.W.2d at 112 (citation omitted) (emphasis added). *Rogers, Pagan,* and *McKinney* followed and relied upon the doctrine in a way unlike *Curry,* for the contract was simply breached in those cases before forfeiture and damages were not calculable in money until after forfeiture. Presumably these decisions rest on the idea that one who contracts expressly with a corporation in good standing necessarily intends to look to that limited-liability entity for performance,

and in justice he should be confined to the consequences of that intention.[4]

Merely to refer to the purposes of the relation-back doctrine demonstrates that it is not justified in the Jonnets' case. The doctrine is not necessary to effectuate their lawful intentions; neither is the doctrine necessary to protect from loss some right they have acquired nor to furnish them a remedy because they would not otherwise have one for a wrong they have suffered. Contrary to their argument, the decisions cited above have not engrafted upon section 171.255(a) an appendage holding that officers and directors are never personally liable whenever it may appear that a post-forfeiture debt, in the sense of a legally enforceable, liquidated money obligation, has some connection to a pre-forfeiture event, cause, or circumstance.

## The Rule of "Strict Construction"

*Schwab* adhered to the narrow, strict, or technical meaning of the word "create" and operated, moreover, on the assumption that the word "debt" was similarly restricted to its legal meaning of a liquidated money obligation that was legally enforceable. The subsequent decisions mentioned previously also operated on that assumed meaning in applying the relation-back doctrine. It is therefore difficult to understand the Jonnets' invocation of the strict-construction rule because, under that rule, the corporation's "debt" first came into existence after forfeiture and the Jonnets are therefore personally liable for the corporate "debt" under section 171.255(a). They argue in reality for an

---

3. A few examples will suffice. *See* 17A C.J.S. *Contracts* § 455, at 574 (1963) (when contracting party elects one of alternatives permitted by contract, all rights as between the parties attach as from the making of the contract); 26 C.J.S. *Deeds* § 94, at 853–54 (1956) (if no other equities intervene, legal effect of deed may relate back to a date earlier than its delivery); 33 C.J.S. *Executors and Administrators* § 151, at 1113 (1942) (issuance of letters testamentary related back to date of deceased's death and validated necessary or proper acts of the representative done in the interim); 84 C.J.S. *Taxation* § 623, at 1244 (1954) (bank's payment of taxpayer's check relates back to the date the check was received by taxing authority).

4. In *Dae Won Choe v. Chancellor, Inc.,* 823 S.W.2d 740 (Tex.App.—Dallas 1992, no writ), the

court held that services rendered on an open account *after* the corporation failed to file its franchise-tax report on the due date resulted in the directors' personal liability under "the plain and ordinary meaning of the words in section 171.255," even though the corporate franchise had not yet been forfeited.

In *Wilburn v. State,* 824 S.W.2d 755 (Tex.App.—Austin 1992, no writ), this Court held that an unemployment tax was a "debt" that was "created" when the wages were actually paid, meaning of course that the amount thereof was a liquidated sum, and when payment was required for work done before loss of the corporate privileges the directors and officers were not personally liable therefor under section 171.255.

*expanded* interpretation of the word "debt" so that it includes unliquidated or inchoate obligations *as well as* liquidated money obligations. Nevertheless, I will discuss the rule of strict construction *as if* they had properly invoked it.

The language and legal effect of a statute may require its "strict" construction, meaning a limited, narrow, or inflexible reading and application of the statutory language. This is true generally of two kinds of statutes, those that authorize a penalty and those that infringe upon private property or liberty interests. Application of the rule does not, however, follow automatically once the court is able to ascertain that the legal effect of the statute places it within one of the two categories.

The rule rests upon two basic propositions. The first is that of fair notice. When statutory language is susceptible of either an expansive or a restricted meaning, and it imposes a penalty, it may be necessary to adhere to the latter meaning so

> that the party upon whom it is to operate may with reasonable certainty ascertain what the statute requires to be done, and when it must be done; otherwise there would be no opportunity for a person charged with the statutory duty to protect himself by the performance of it according to law.

*Missouri, K. & T. Ry. of Tex. v. State,* 100 S.W. 766, 767 (Tex.1907); *see also State v. International & G. N. Ry.,* 179 S.W. 867 (Tex.1915); *Houston E. & W. Ry. v. Campbell,* 91 Tex. 551, 45 S.W. 2 (1898). The Jonnets do not suggest that they have been subjected to liability because the terms of section 171.255(a), or some other statute, are written in language that is insufficiently specific in light of the penalty it imposes.

In this connection, I should observe that the necessity for a literal, narrow, and technical, and inflexible interpretation diminishes considerably when the penal statute supplies procedures for preventing or circumscribing the chances of arbitrary action being taken by government in the name of the statute, whatever it lacks in specificity. *Carbide Int'l Ltd. v. State,* 695 S.W.2d 653, 659 (Tex. App.—Austin 1985, no writ); *see* 3 Sands,

*Sutherland Statutory Construction* § 59.07, at 22 (1974) ("[P]rocedural safeguards may now be conceived to be more suitable than the safeguard of strict construction to protect the interests of individuals in not being subjected to undeserved punishment."). The Tax Code provides such procedural safeguards in sections 171.213 and 171.313, which authorize administrative revival of the corporate shield and privileges on filing of the delinquent report and paying the sums owed the State. Similarly, the Natural Resources Code provides for administrative hearings and judicial review of the Commission's actions in cases like the present. *See* Tex.Nat. Res.Code Ann. §§ 81.0531–.0532, 85.381 (West 1993).

The second proposition underlying the rule of strict construction is that of proportion:

> [T]he more severe the penalty, and the more disastrous the consequences to the person subject to the provisions of the statute, the more rigid will be the construction of its provisions in favor of such a person and against the enforcement of such law.

*Missouri, K & T. Ry.,* 100 S.W. at 767. One may assume the penalties possible to be imposed under section 171.255(a) are severe. It is plain in all events that the rule of strict construction can be of no assistance to the Jonnets even if they had actually invoked it.

So far as I am able to find, the word "debt" as used in section 171.255(a) has never been thought to include an obligation that is unliquidated. Indeed, it is difficult to see how such a meaning could be assigned the word if it is required to be construed "strictly," that is to say, narrowly, literally, and technically.

Under the strict meaning of the word "debt," no debt came into existence in the Jonnets' case until after forfeiture. Before forfeiture, the corporate debt existed only in unliquidated form; the obligation did not become liquidated until after forfeiture. If the Jonnets are to escape liability under the judicial decisions they cite, then they must show some basis justifying a relation-back of the liquidated debt to a time before forfeiture. They do not claim that the relation-back

doctrine should apply in their case in order to effectuate contractual intentions, to preserve from loss a right they have acquired, or to afford them a remedy for a wrong they have suffered. Instead, they contend as they do based on the corporation's violation of law, its failure to plug the wells as required by statute, which occurred before forfeiture. The doctrine does not serve to protect such acts.

Section 171.255(a) was meant "to prevent wrongful acts of culpable officers of a corporation, and was for the protection of the public and particularly those dealing with the corporation." *Schwab,* 198 S.W.2d at 81. The circumstances of the present case seem to fit squarely within this statutory objective. The corporation was under a statutory duty to plug the wells and the Commission ordered it to do so. The Jonnets were corporate officials at all material times and responsible for operating the corporation according to law. They do not argue they are not culpable in that regard. They argue instead that section 171.255(a) does not extend to the circumstances, even though they were culpable. I disagree and therefore concur in affirming the trial court judgment.

JONES, Justice, dissenting.

Believing that the majority has extended officer and director liability under section 171.255 of the Tax Code far beyond what the legislature intended, I respectfully dissent.

Brent Ranch Operating, Inc. ("BRO") was incorporated on November 1, 1985, with R.P. Brent as its sole director. On December 1, 1985, BRO became the operator of record of certain oil wells in Carson County. At that time, the wells in question apparently had already become dry or inactive, never again producing after October 1985. Pursuant to Statewide Rule 14 promulgated by the Railroad Commission ("Commission"), the operator of the wells was required to commence plugging operations within a period of ninety days after drilling or operations ceased (the deadline is now one year). *See* 16 Tex.Admin.Code § 3.14 (1993). BRO did not plug the wells. Sometime thereafter, perhaps as late as March 1989, Elmer and Joseph Jonnet became directors and officers of BRO.

BRO subsequently failed to report and pay franchise taxes due March 15, 1990. Its right to do business and charter were later forfeited. As far as the record reveals, BRO had no remaining assets on March 15, 1990, and conducted no business whatsoever after that date. Nor does the record reflect that the Jonnets dealt improperly with any assets the corporation may have had before it ceased doing business.

Based on BRO's failure to plug the wells, in 1990 the Commission initiated an administrative proceeding to assess a penalty against BRO. *See* Tex.Nat.Res.Code Ann. §§ 81.-0531–.054, 85.381 (West 1993). That proceeding culminated in a final order of the Commission dated December 3, 1990, assessing BRO an administrative penalty of $28,-000. The Jonnets were not parties to that proceeding. The present suit was brought pursuant to Tex.Tax Code Ann. § 171.255 (West 1992) (hereinafter "Tax Code"), to collect the penalty from the Jonnets individually. After a bench trial at which only documentary evidence was produced, the trial court rendered judgment against the Jonnets for $48,000 in civil and administrative penalties, plus attorney's fees and court costs. The majority affirms.

Section 171.255 of the Tax Code provides:

(a) If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived. The liability includes liability for any tax or penalty imposed by this chapter on the corporation that becomes due and payable after the date of forfeiture.

(b) The liability of a director or officer is in the same manner and to the same extent as if the director or officer were a partner and the corporation were a partnership.

(c) A director or officer is not liable for a debt of the corporation if the director or officer shows that the debt was created or incurred:

(1) over the director's objection; or

(2) without the director's knowledge and that the exercise of reasonable diligence to become acquainted with the affairs of the corporation would not have revealed the intention to create the debt.

(d) If a corporation's charter or certificate of authority and its corporate privileges are forfeited and revived under this chapter, the liability under this section of a director or officer of the corporation is not affected by the revival of the charter or certificate and the corporate privileges.

Tax Code § 171.255. Considering the statute as a whole, its nature and object, and the consequences that would follow from an imposition of liability on persons in the Jonnets' position, I believe the result reached by the majority is contrary to the intent of the legislature.

"In determining the meaning of a statute, a court must consider the entire act, its nature and object, and the consequences that would follow from each construction." *Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 249 (Tex.1991). "The cardinal rule in statutory interpretation and construction is to seek out the legislative intent from a general view of the enactment as a whole, and, once the intent has been ascertained, to construe the statute so as to give effect to the purpose of the Legislature." *Citizens Bank v. First State Bank, Hearne,* 580 S.W.2d 344, 348 (Tex.1979). In determining legislative intent, it is essential that we look to the statute as a whole and not solely to isolated provisions. *Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex. 1985).

The key question for determining personal liability under section 171.255(a) is when the corporate debt in question was "created or incurred." The critical clause of subsection (a) is stated in the passive voice rather than the active voice: "each director or officer ... is liable for each debt ... that *is created or incurred*" (had it been written in the active voice, the statute would have read, "each debt ... that the corporation creates or incurs"). If we look at subsection (a) in isolation, therefore, it is possible to conclude that a corporate debt could be created or incurred by a third party, without the in-

volvement of the corporation itself, such as by the Commission's assessing a penalty or a court's rendering a judgment against the corporation. Looking at the statute as a whole, however, it becomes obvious that such an interpretation is incorrect. For example, subsection (c)(2) relieves directors and officers from liability for debts created or incurred "without the director's knowledge and [for which] the exercise of reasonable diligence to become acquainted with the affairs of the corporation would not have revealed the intention to create the debt." Tax Code § 171.255(c)(2). Thus, the statute contemplates that directors and officers should be personally liable *only* for debts (1) they knew were being created or incurred, or (2) where the exercise of reasonable diligence to become acquainted with the affairs of the corporation would have revealed the intention to create the debt. Viewing the enactment from this perspective reveals that the legislature envisioned personal liability only for debts created or incurred through some sort of "affairs of the corporation" about which the director or officer in question had some knowledge and control. In referring to "the intention to create the debt," the legislature can only have been speaking of the *corporation's* intention. Thus, an interpretation allowing personal liability to be imposed for a debt "created" by a third party such as the Commission, without any involvement or transaction of business by the corporation, is contrary to the clear intent of the legislature.

Similarly, subsection (c)(1) relieves directors and officers from personal liability for debts created or incurred "over the director's objection." Tax Code § 171.255(c)(1). Such a provision would make no sense if subsection (a) were interpreted to impose personal liability on directors and officers for corporate debts "created" by a third party without any transaction of business by the corporation; in the case of an administrative penalty or court judgment, for example, a director or officer could escape personal liability simply by "objecting" to the imposition of the penalty or judgment against the corporation. Again, therefore, this provision demonstrates that the legislature contemplated personal liability of directors and

officers under section 171.255 only for corporate debts created or incurred through some transaction of business by the corporation, regarding which the officer or director in question had some degree of knowledge and control.

Before reviewing what the courts have said about the provision, a word about the evolution of the statutory language is in order. Before 1977 the statute required affirmative proof that a corporate debt was created with the "knowledge, approval and consent" of the officer or director sought to be held liable. *See* Act of Aug. 8, 1961, 57th Leg., 1st C.S., ch. 24, art. VII, § 9, 1961 Tex.Gen.Laws 71, 110–11; Act of May 24, 1969, 61st Leg., R.S., ch. 801, § 11, 1969 Tex.Gen.Laws 2366, 2372 (Tex.Tax.–Gen.Ann. art. 12.14, since repealed and codified at Tax Code § 171.255). In 1977 the statute was amended to delete the requirement for affirmative proof of knowledge, approval, and consent, but the following sentence was added: "However, any officer or director may avoid liability if he shows that the debt was created (1) over his objection, or (2) without his knowledge, if the exercise of reasonable diligence to acquaint himself with the affairs of the corporation would not have revealed the intention to create the debt." Act of May 25, 1977, 65th Leg., R.S., ch. 671, § 1, 1977 Tex.Gen.Laws 1692, 1692–93.

The purpose of this amendment was not to expand the actual scope of officer and director liability by completely removing the elements of knowledge and consent. Rather, the legislative history behind the 1977 amendment shows that the intent of the legislature was simply to shift the burden of proof to the officers and directors regarding their knowledge of and consent to the corporation's creation of the debt:

> The current law ... provides that the officers and directors of a corporation that has forfeited its right to do business become personally liable for debts incurred with their knowledge after such forfeiture. The bill shifts the burden of proof to the directors and officers who must show that they could not have reasonably known of such a debt before they can escape liability.

House Study Group, Bill Analysis, Tex.H.B. 1860, 65th Leg., R.S. (1977). "The purpose of this bill is ... to place the burden of proof on the directors and officers of such a corporation with respect to their liability for all debts incurred by the corporation on or after forfeiture." House Ways and Means Comm., Bill Analysis, Tex.H.B. 1860, 65th Leg., R.S. (1977).

Keeping in mind that the purpose of the 1977 amendment was simply to shift the burden of proof regarding knowledge and consent to the officers and directors, not to expand the overall scope of officer and director liability, early court interpretations of the statute become extremely helpful. For example, the following passage from *First National Bank v. Silberstein*, 398 S.W.2d 914 (Tex.1966), although somewhat lengthy, reveals the court's view of the intended scope of the statute:

> [Article 12.14] does not purport to require actual knowledge on the part of the officers and directors of the franchise tax delinquencies of the corporation and the forfeiture of its right to do business as a condition to personal liability for subsequently incurred corporate debts. The statute takes for granted that officers and directors will know these facts or, in any event, does not make such knowledge a condition to liability. It is further clear under the statute that after a corporation no longer has the right to do business the personal liability of officers and directors for subsequently incurred corporate debts is limited to *those debts of which they have knowledge and, with the opportunity afforded thereby, which they have consented to and approved.* This does not mean that officers and directors are personally liable only for debts of the corporation which they personally create, or which are created in their presence, or of which they have contemporaneous knowledge. There is no implication in the wording of the statute that these circumstances are conditions to liability or that knowledge must co-exist in exact time with the purchase transaction giving rise to the debt. To the contrary, the reasonable construction of the statute to the facts at hand is that *personal liabili-*

*ty is determined by the acts of Respondents in consenting to and approving the debts of the corporation where knowledge of their creation is shown to have come to them in the regular course of the business of the corporation.* This ... is liability which results from and is attributable to the acts of Respondents. They had only to disapprove and disavow the debts to avoid personal liability; but having consented to and approved the debts, they became personally liable therefor.

398 S.W.2d at 915–16 (emphasis added). Citing *Silberstein,* the court in *Longoria v. Atlantic Gulf Enterprises, Inc.,* 572 S.W.2d 71 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.), concluded,

Under the terms of [article 12.14], the personal liability of officers and directors for debts incurred after the corporation no longer has the right to do business is limited to those debts of which they have knowledge and which they have consented to and approved in the regular course of the business of the corporation.

572 S.W.2d at 78.

Although the burden is now on the officers and directors to prove their disapproval of or reasonable lack of knowledge of post-forfeiture debts,[1] *Silberstein* and *Longoria* demonstrate that the statute was meant to impose personal liability on officers and directors only for debts arising from a post-forfeiture transaction of business by the corporation. Only by limiting personal liability to debts created through an actual transaction of business could officers and directors have a fair and reasonable opportunity to protect themselves against such personal liability by disapproving and disavowing such debts.

Moreover, construing section 171.255 to permit imposition of personal liability only for debts created or incurred through the transaction of corporate business (as opposed to debts "created" solely by the action of a court or administrative agency) is consistent with the purposes of the act. Section 171.255 has two purposes: First, the statute is meant to discourage the transaction of business by a corporation whose right to do business has been forfeited for failing to timely report and pay franchise taxes; the imposition of personal liability on corporate officers and directors is a reasonable means of accomplishing this purpose, because they are the corporate agents responsible for controlling the nature and extent of the business the corporation transacts. *See Schwab v. Schlumberger Well Surveying Corp.,* 145 Tex. 379, 198 S.W.2d 79, 81 (1946) ("The statute was meant to prevent wrongful acts of culpable officers of a corporation, and was for the protection of the public and particularly those dealing with the corporation."). Second, the statute is meant to encourage the timely reporting and payment of franchise taxes; again, the imposition of personal liability on corporate officers and directors is a reasonable means of accomplishing this purpose, because they are the corporate agents responsible for seeing that such reports are made and taxes paid. *See Ross Amigos Oil Co. v. State,* 134 Tex. 626, 138 S.W.2d 798, 800 (1940) ("The penalties imposed for failure to pay the franchise tax are heavy, and were evidently provided to hasten payment and to inflict a punishment on such corporations for failure to pay such tax.").

With these purposes in mind, interpreting section 171.255 to permit imposition of personal liability on directors and officers for debts imposed by third parties without any post-forfeiture transaction of business by the corporation arguably creates another inconsistency. Such an interpretation would, as in the present case, allow such liability to be imposed on corporations whose failure to report and pay franchise taxes was the result of being insolvent and wholly defunct. The directors and officers of a defunct corporation may, of course, avoid all possibility of personal liability under section 171.255 by formally dissolving the corporation, thereby eliminating any future need to report and pay franchise taxes. *See* Tex.Bus.Corp. Act Ann. arts. 6.01–.07 (West 1980 & Supp.1994). Thus, in the case of a defunct, inactive corporation, the only purpose that could be served

---

1. "Post-forfeiture" is a term by which I mean the time after the date the franchise taxes and report were due and before corporate privileges were revived. *See Wilburn v. State,* 824 S.W.2d 755, 762 (Tex.App.—Austin 1992, no writ).

by imposing personal liability for post-forfeiture penalties and judgments would be to encourage directors and officers of such corporations to file formal dissolution documents. While it might be well and good for defunct corporations to file such dissolution documents, the very statutes that provide for their filing impose no penalty for a failure to do so. *See Holliday v. Henry I. Siegel Co.*, 643 S.W.2d 519, 520–21 (Tex.App.—Houston [14th Dist.] 1982), *aff'd*, 663 S.W.2d 824 (Tex. 1984); *Angus v. Air Coils, Inc.*, 567 S.W.2d 931, 933–34 (Tex.Civ.App.—Dallas 1978, no writ). It would be anomalous, to say the least, for an unrelated statute to provide a penalty for failure to take an action when the very statute requiring the action provides none. Thus, the conclusion is inescapable that when the legislature decided to impose personal liability on directors and officers for corporate debts created or incurred after a failure to report or pay franchise taxes, it did not have in mind post-forfeiture judgments or penalties against defunct corporations that had not transacted any post-forfeiture business whatsoever. This lends additional weight to the conclusion that, for purposes of section 171.255, a corporate debt is "created or incurred" by some manner of transaction of business by the corporation, not by the imposition of a debt by a third party without any involvement of the corporation itself.

Justice Kidd's majority opinion relies heavily on the notion that BRO's failure to plug the wells was a "continuing violation" of the Commission's Rule 14. This fact is not material, however, because under section 171.255 a debt is not "created or incurred" when the *violation* of a duty occurs (as long as the violation arises from a *failure* to act), but on the occurrence of the event that triggers the obligation or duty in the first place. For example, in *Wilburn v. State*, 824 S.W.2d 755 (Tex.App.—Austin 1992, no writ), this Court held that the payment of wages was the event that triggered the duty to pay employment taxes; accordingly, we held that the tax debt was "created or incurred" when wages were paid to employees, notwithstanding that the corporation was only required to remit the taxes quarterly:

> [W]e decline to hold that the debt is incurred when contributions are due [to the Employment Commission] because to do so would hold officers and directors personally liable for a corporate debt that is based, at least in part, on wages paid before the date the franchise taxes were due. For example, while the first quarter contributions are due April 1, they are based on wages paid between January 1 and March 30. If the debt were incurred when "due," Wilburn would be held personally liable for contributions that are based, in part, on wages paid before March 15, 1986. We believe the State's construction would extend officer and director liability beyond that contemplated by the legislature when it enacted § 171.255.

824 S.W.2d at 765. Thus, we held that the post-forfeiture *violation* of the contribution statute was immaterial, because the only material date was when the event or events occurred that *gave rise to the duty* to pay the taxes. In the present case, therefore, it is not material that BRO's failure to plug the wells could be considered to be a "continuing violation," because the violation date does not determine when the debt was created or incurred under section 171.255.

Finally, the majority's interpretation of the statute is contrary to existing caselaw. Earlier cases that have addressed the liability of an officer or director under section 171.255 or its predecessors have uniformly held that, for purposes of that statute, a corporate debt is "created or incurred" on the occurrence of the event that initially triggers the existence of the corporation's duty or obligation:

(1) In *Schwab v. Schlumberger Well Surveying Corp.*, 145 Tex. 379, 198 S.W.2d 79 (1946), the corporation renewed an existing corporate debt (a promissory note) after forfeiture of the corporation's right to do business. Nonetheless, the court held that the defendant, a corporate officer, was not liable: "It thus seems obvious that the liability imposed under the statute is only for debts contracted after the forfeiture of the right to do business, and has no application to the renewal of obligations arising prior thereto." *Id.*, 198 S.W.2d at 81. It is noteworthy that, although the statute being examined in *Schwab* contained the same "created or in-

curred" language as the present statute, the supreme court said that before personal liability could be imposed under the statute, a debt had to be "contracted" after forfeiture. This is consistent with the interpretation that section 171.255 contemplates personal liability only for debts created or incurred through a post-forfeiture transaction of business by the corporation, not for a post-forfeiture penalty or judgment that arose from a pre-forfeiture event.

(2) In *Curry Auto Leasing, Inc. v. Byrd*, 683 S.W.2d 109 (Tex.App.—Dallas 1984, no writ), the corporation had entered into a motor vehicle lease agreement, promising to pay $500 per month for 48 months. After about two years, the corporation stopped making lease payments, and the leasing company terminated the lease and repossessed the car on September 10, 1982; the corporation also failed to pay its franchise taxes, and its right to do business was forfeited on September 15. The leasing company sold the car at a loss; in addition, the company imposed late-payment fees and storage fees on the corporation. The appellate court held that the statute did not impose liability on the officers and directors "if the obligations, circumstances, conduct, or transactions that create or incur the debt in question pre-existed the forfeiture." *Id.* at 112. The court went on to hold that the debt "related back" to the execution of the lease:

> When parties enter into a contract the law presumes they intend the consequences of its performance. It follows that performance or implementation of the contractual provisions relate back to and are authorized at the time of execution of the contract.... [T]he debt plaintiff sought to recover from defendant corporate officers was authorized by the rental agreement and, therefore, was brought into existence, caused by, resulted from, or arose out of the performance or implementation of the provisions of the rental contract at the time Curry Auto opted to terminate the contract on or before September 10, 1982. The items in question, as debts of the corporation, relate back to [the corporation's] promise to pay made in the rental contract executed December 1, 1980. No debt for which the corporate

officers are liable is shown to have been "created or incurred" after the forfeiture. *Id.* (citations omitted).

(3) In *River Oaks Shopping Center v. Pagan*, 712 S.W.2d 190 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.), the corporation entered into a lease for real property in 1978. In 1979 the corporation forfeited its right to do business. It subsequently defaulted on making the payments on the lease. Relying on *Schwab* and *Curry Auto Leasing*, the court had no trouble affirming a summary judgment in favor of the individual officers and directors.

(4) In *McKinney v. Anderson*, 734 S.W.2d 173 (Tex.App.—Houston [1st Dist.] 1987, no writ), the corporation entered into an equipment lease in 1982 and defaulted on the lease in early 1983. The corporation had been formed in late 1981 and had made an "advance payment" on its franchise taxes. In a suit against a corporate officer, the trial court granted summary judgment *for the lessor* against the officer. The court of appeals reversed, relying on *Schwab, Curry Auto Leasing*, and *River Oaks Shopping Center*, among others:

> [T]his debt resulted from the equipment lease agreement executed by the parties on February 4, 1982. As such, strictly construing the language of section 171.255, this debt arose on February 4, 1982, and cannot be said to have been "created" or "incurred" on or after the dates that the semi-annual payments were due.

*McKinney*, 734 S.W.2d at 175.

(5) In *Dae Won Choe v. Chancellor, Inc.*, 823 S.W.2d 740 (Tex.App.—Dallas 1992, no writ), the corporation was required to report and pay franchise taxes on March 15, 1988. That same day, the corporation entered into a contract for the plaintiff, Dae Won Choe, to perform sewing services for the corporation (presumably on a per-hour basis, although the opinion does not say). The corporation did not report and pay its franchise taxes due on March 15. The plaintiff performed personal services for the corporation from March 15 through March 24. In a suit brought under section 171.255, the trial court granted summary judgment for the individu-

al corporate officer. On appeal, the court reversed in part, holding that summary judgment was proper as to the services rendered *on* March 15, but not as to services rendered thereafter:

> Under our facts, [the corporate officer] is not liable for debts of the corporation incurred on March 15, 1988, the date on which the franchise tax and report were due, because the due date is excluded under the statute; however, she is liable for the corporate debts incurred for the period beginning March 16, 1988 through March 24, 1988. The summary judgment evidence raises a genuine issue of material fact as to the amount of debt incurred during this time period.

*Id.* at 743–44. Thus, the court's holding was that the obligation to pay for personal services was incurred when the services were rendered.

(6) In *Wilburn v. State,* 824 S.W.2d 755, discussed above, the state sued a corporate officer to recover unemployment taxes the corporation failed to pay. The unemployment taxes were due April 1, based on wages paid to corporate employees between January 1 and March 30. The corporation failed to report and pay its franchise taxes due March 15, and its corporate privileges were later forfeited. This Court rejected the state's position that the unemployment-tax debt was created or incurred when the taxes were due on April 1:

> [T]he debt (the obligation to pay contributions to the Unemployment Compensation Fund) is created or incurred when wages are actually paid. The payment of wages is the event that both creates (brings into existence) and incurs (brings on or occasions) the employment-tax liability. Absent payment of employment wages, there is no employment-tax liability.

*Id.* at 765. *Wilburn* is closely analogous to the present case, because it involved a statu-torily created obligation rather than one created by contract.

I believe the foregoing demonstrates that there is only one reasonable interpretation of the scope of the personal liability imposed on directors and officers by section 171.255(a): the debt must have been created or incurred by a post-forfeiture transaction of business by the corporation.[2] However, even if it could be said that the interpretation adopted by the majority is also reasonable, the courts have been unanimous in demanding a strict construction of the statute.[3] *See Schwab,* 198 S.W.2d at 81; *Davis v. State,* 846 S.W.2d 564, 570 (Tex.App.—Austin 1993, no writ); *Wilburn,* 824 S.W.2d at 760–61; *McKinney,* 734 S.W.2d at 174; *River Oaks Shopping Ctr.,* 712 S.W.2d at 191; *Curry Auto Leasing,* 683 S.W.2d at 111–12. Therefore, we are required to adopt the construction that gives imposition of personal liability the narrower scope.

Justice Powers's concurring opinion takes a different tack, concluding that the Jonnets are personally liable under section 171.255 because the term "debt" has been defined by the Texas Supreme Court as a "specified sum of money" and is defined elsewhere in chapter 171 of the Tax Code as an obligation "measured in a certain amount of money." *See Seay v. Hall,* 677 S.W.2d 19, 23 (Tex. 1984); Tax Code § 171.109(a)(3). The statutory definition was added by an amendment in 1987. *See* Act of June 1, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex.Gen.Laws 1734, 1735. The concurring opinion uses this narrow definition to argue that under section 171.255 a duty or obligation to pay an uncertain sum does not become a "debt" until it is transformed by a court or administrative agency into a judgment or penalty of a fixed amount. From this, the opinion reasons that any post-forfeiture judgment or administrative penalty necessarily results in personal liability of officers and directors, even if—as

---

2. I do not mean by this to say that the corporation must commit some *affirmative* act. Passive acts, such as the acceptance of money or services, may also constitute the transaction of business.

3. This Court has called the statute "highly penal in nature and one which could produce great hardship." *See Sheffield v. Nobles,* 378 S.W.2d 391, 392 (Tex.Civ.App.—Austin 1964, writ ref'd). One commentator has referred to the statute as a "Draconian provision." *See* Robert W. Hamilton, *The Corporate Entity,* 49 Tex.L.Rev. 979, 995–96 (1971).

in the present case—the event giving rise to the underlying obligation occurred long before the corporation's failure to report and pay franchise taxes. Although much of what I have said above applies to this analysis as well, there are additional reasons why I believe it to be incorrect.

First, as demonstrated by the terms of the definition in section 171.109 and as confirmed by legislative history, the definition was not intended to apply to the use of the word "debt" in section 171.255. The definition contained in section 171.109 states, " 'Debt' means any legally enforceable obligation measured in a certain amount of money which must be performed or paid within an ascertainable period of time or on demand." Tax Code § 171.109(a)(3). This statutory definition cannot reasonably apply to a court judgment or an administrative penalty. Although judgments and administrative penalties are "measured in a certain amount of money," they clearly are not required to be "performed or paid within an ascertainable period of time." Nor would it make sense to say that judgments and penalties are payable "on demand." Thus, the language of the definition itself is inconsistent with its application to judgments and administrative penalties.[4]

The legislature's intent that the definition not apply to section 171.255 is confirmed by the legislative history of the bill that became the 1987 amendment adding the definition of "debt" to section 171.109. The report of the House Ways and Means Committee, the "Fiscal Note" from the director of the Legislative Budget Board, and the bill analysis prepared by the House Research Organization all reflect that the purpose of the amendment was to codify an existing accounting rule of the State Comptroller of Public Accounts that was being challenged in court by various parties. See House Ways and Means Comm., Bill Analysis, Tex.S.B. 1170, 70th Leg., R.S. (1987); Fiscal Note, Tex.S.B. 1170, 70th Leg., R.S. (1987); House

Research Organization, Bill Analysis, Tex. S.B. 1170, 70th Leg., R.S. (1987). A corporation calculates how much franchise tax it owes based, in part, on the amount of its surplus. The comptroller had adopted an accounting rule prohibiting corporations from deducting from their calculation of surplus any sums set aside by the corporation to provide for contingent or estimated losses. Rather, under the comptroller's rule, only debts of a fixed amount could be used to reduce a corporation's surplus. Several corporations had successfully challenged the validity of the comptroller's rule in court and, although the court rulings were being appealed, the legislature sought to codify the rule in order to protect against a possible revenue shortfall in the event the appeals were unsuccessful. Thus, the legislature added the amendment in order to guarantee that corporations could not, in calculating their franchise taxes, reduce the amount of their surplus by unrealized, estimated, or contingent losses. Rather, as under the comptroller's rule, only debts of a fixed, certain amount would be allowed to reduce surplus. Based on the eventual results of the state's appeals in the court challenges, the legislature's decision to adopt the amendment was a wise one. See State v. Shell Oil Co., 747 S.W.2d 54 (Tex.App.—Austin 1988, no writ); State v. Sun Ref. & Mktg., Inc., 740 S.W.2d 552 (Tex.App.—Austin 1987, writ denied); State v. Sun Oil Co. (Del.), 740 S.W.2d 556 (Tex. App.—Austin 1987, no writ). For purposes of the present case, however, the important point is that the 1987 amendment adding the definition of "debt" to section 171.109 was unquestionably not intended to alter the scope of officer and director liability under section 171.255.

Second, the analysis adopted by the concurring opinion is contrary to a strict construction of the statute and has been expressly rejected by at least two courts. In Rogers v. Adler, 696 S.W.2d 674 (Tex.App.— Dallas 1985, writ ref'd n.r.e.), the plaintiff

---

4. Moreover, even though the definition of "debt" in section 171.109 applies "in this chapter," the *placement* of the definition in that section lends support to the conclusion that it was not intended to alter the meaning of the word "debt" in section 171.255. The title of section 171.109 is

"Surplus," and it contains other definitions and provisions indicating clearly that the purpose of the entire section is to regulate how a corporation calculates the amount of its surplus, from which it determines the amount of franchise taxes owed.

sued the corporation under both contract and tort theories; the judgment did not specify which theory formed the basis of the judgment. In a subsequent suit against the individual officers and directors of the corporation, the plaintiff argued that, because the supreme court had defined "debt" as a "specified sum of money," *Seay*, 677 S.W.2d at 23, her tort cause of action did not constitute a "debt" until it was reduced to judgment. The *Rogers* court rejected this argument:

> [W]hile we adhere to the supreme court's definition of "debt" as being an obligation for a specific sum, we are persuaded that it cannot be so narrowly applied within the context of the Code section before us....
>
> ... [A] strict construction of the statute would prohibit the imposition of liability in a case, such as here, where all of the operative facts occurred at least four years before the charter was forfeited. The mere fact that the amount of money owed to [the plaintiff] as damages was unspecified at the time of the forfeiture does not establish that the debt was created or incurred after forfeiture.
>
> ....
>
> ... We are persuaded that, as applied to the case before us, the distinction [between tort and contract] is one without a difference. This is true because the major premise forming the basis for [the plaintiff's] argument is not that her claim "sounded in tort," but, instead, that no *debt* was in existence, that is, *incurred* until her claim was reduced to judgment.

696 S.W.2d at 676–77. Thus, the court held that although a "debt" might be properly defined as a "specified" sum of money for some purposes, that narrow definition was not applicable in a case based on section 171.255(a).

The analysis embraced by the concurring opinion was also rejected in *Curry Auto Leasing*, where the court held that the mere reduction of an indebtedness to judgment does not constitute the "creation" or "incurrence" of a debt:

> Curry Auto is not understood to urge that the reduction of its damages to judgment converted the sum thereof into new indebtedness created or incurred after for-

feiture. Nevertheless, it is worthwhile to note that the principles of strict construction enunciated in *Schwab* would prohibit this construction. Under this prohibited construction, officers and directors would become liable for any judgment rendered after forfeiture, regardless of when the debt on which the judgment is based was created or incurred.

683 S.W.2d at 112.

Finally, the concurring opinion misconstrues the strict-construction doctrine. That opinion asserts that a strict construction of section 171.255 requires that a narrow, restricted meaning be given to the term "debt," which would then support the opinion's conclusion that no debt was created or incurred until the corporate obligation ripened into a fixed amount through the Commission's assessment of a penalty. This application of the strict-construction doctrine is incorrect. Under strict construction, it is the operation of the statute as a whole that is restricted, not the meaning of some isolated word or phrase:

> Strict construction ... does not require that the words of a statute be given the narrowest meaning of which they are susceptible. The language used by the Legislature may be accorded a full meaning that will carry out its manifest purpose and intention in enacting the statute, but the *operation of the law* will then be confined to cases which plainly fall within its terms as well as its spirit and purpose.

*Coastal States Gas Producing Co. v. Pate*, 158 Tex. 171, 309 S.W.2d 828, 831 (1958) (emphasis added); *see also City of Ingleside v. Kneuper*, 768 S.W.2d 451, 457 (Tex.App.—Austin 1989, writ denied). *See generally* 3 Norman J. Singer, *Sutherland Statutory Construction* § 58.02, at 72–73 (5th ed. 1992). Thus, in the context of interpreting section 171.255, the doctrine of strict construction requires that the statute be construed so that the *penalty* imposed by that provision—personal liability—is applied only to cases that "plainly fall within its terms as well as its spirit and purpose." *Coastal States*, 309 S.W.2d at 831. In the present case, the terms, purposes, and spirit of section 171.255 all militate against an interpretation of the

term "debt" that would impose personal liability on officers and directors for corporate obligations merely because, by twist of fate, such obligations were not reduced to a fixed amount until after the corporation had failed to report and pay its franchise taxes. We should be loath to disregard the protections of the corporate form on such a whim.

For the foregoing reasons, I would reverse the judgment of the trial court.[5]

---

5. The trial court also concluded that the Jonnets waived any complaint about their individual liability because they did not respond to the State's suit with a verified answer pursuant to Rule 93(2), Tex.R.Civ.P., denying that they were liable in the capacity in which they were sued. Because the trial court's waiver conclusion could be an independent ground for affirming the trial court's judgment, this point of error would also have to be sustained before the trial court's judgment could be reversed. As a result of the majority's decision on the "created or incurred" issue, however, neither the majority nor concurring opinion addresses the Jonnets' third point of error in which they complain of the trial court's conclusion as to waiver.

Without addressing the issue in depth, suffice it to say that Rule 93(2) applies when a defendant wishes to assert that he has been sued in a mistaken legal capacity. *See John Chezik Buick Co. v. Friendly Chevrolet Co.*, 749 S.W.2d 591, 593 (Tex.App.—Dallas 1988, writ denied); *Miles v. Plumbing Servs. of Houston, Inc.*, 668 S.W.2d 509, 512–13 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). In a case like the present one, where the Jonnets were correctly sued in their individual capacities and properly responded by denying that they were liable at all, Rule 93(2) has no application whatsoever. I would sustain the Jonnets' third point of error.