Opinion issued March 1, 2016



In The

# Court of Appeals

For The

## First District of Texas

————————————

NO. 01-14-00305-CV

————————————

**ROBERT HOVEL AND TANIA HOVEL, Appellants**

**V.**

**GAL BATZRI, Appellee**

On Appeal from the 234th District Court
Harris County, Texas
Trial Court Case No. 2013-43259A

## DISSENTING OPINION

There is an aphorism: "You can ignore reality, but you cannot ignore the consequences of ignoring reality." This case requires this Court to determine whether, under Texas Tax Code section 171.255, appellee Gal Batzri, the sole shareholder, officer, and director of 7677 Real Street, L.L.C. ("7677"), should be

held liable to appellants Robert and Tania Hovel for the torts of negligent misrepresentation and fraud committed against them by 7677 that were reduced to a liquidated judgment debt against the corporation after it forfeited its corporate charter. The majority has chosen to ignore the reality of seventy unbroken years of the Texas Supreme Court's and appellate courts' consistent construction of section 171.255 and to substitute its own alternative meaning of the statute's terms under its own chosen rules of construction.

The purpose of section 171.255, as clearly stated by the Texas Supreme Court in 1946 and unchanged since then, is to prevent wrongful acts by culpable corporate directors and officers and to protect the public—particularly those who deal with corporations—by imposing personal liability on those officers for "debts of the corporation . . . created or incurred" after forfeiture of the corporate charter as a result of such wrongful acts. The Texas Supreme Court has required "strict construction" of the terms of section 171.255 to ensure that culpable corporate officers and directors are held liable for debts of the corporation created or incurred after forfeiture of a corporate charter to the same extent that a culpable partner may be held liable for the debts of a general partnership, including being held personally liable for wrongful acts of the corporation that occurred before forfeiture but were reduced to a debt of the corporation after forfeiture, as here.

Following that law, I would reverse the trial court's judgment and render judgment in the Hovels' favor.

The majority in this case holds just the opposite. Based on its own new construction of the terms of section 171.255 under its own rules, the majority affirms the trial court's judgment and *absolves* Batzri from liability to the Hovels for 7677's judgment debt for fraud and negligent misrepresentation, effectively preventing them from recovering redress for the wrongs done to them.

Both the majority's reasoning and its holding are exactly contrary to all precedent and to the statute's clear meaning and purpose. Although recognizing that Texas Supreme Court law requires that section 171.255 of the Tax Code be strictly, or narrowly, construed in accordance with its language, the majority reasons that section 171.255 is not an unambiguous civil liability statute that must be strictly construed to impose liability on culpable corporate officers to prevent corporate wrong-doing, as the statute itself states. Rather, section 171.255 is an ambiguous "penal" statute that must be broadly construed to protect culpable officers under the virtually obsolete canon of construction of ambiguous criminal statutes known as "the rule of lenity"—a rule of construction which requires broad construction of ambiguous criminal statutes in favor of criminal defendants.

Accordingly, Batzri, viewed leniently as a criminal defendant, is not liable for 7677's debt to the Hovels, since the corporation's wrongful acts of fraud and

3

negligent misrepresentation against the Hovels occurred prior to forfeiture of the corporate charter; it is those pre-forfeiture wrongful acts—not the post-forfeiture liquidated judgment entered on them—that constitute the "debt" of the corporation under section 171.255; and, under the plain language of section 171.255, corporate officers cannot be held personally liable for pre-forfeiture corporate debts. The public doing business with a corporation that commits a wrongful act and then forfeits its charter so that no judgment or penalty can be enforced against it must bear the loss—not the responsible officers and directors of the corporation.

The result is an opinion that contravenes the purpose and plain language of section 171.255, the previously uniform history of the statute's construction, and the policy of the state of Texas. It also creates a conflict with all other Texas Courts of Appeals—including the Texas Supreme Court and our sister court, the Fourteenth Court of Appeals. This act of judicial will renders the law unreliable, puts this Court at odds with all other courts, wastes judicial resources, and greatly increases the delay and costs of litigation in this case, even as it invites review and reversal. Those are the consequences of ignoring the reality of the law. I, therefore, dissent.

I would reverse the judgment of the trial court in favor of Batzri and render judgment in favor of the Hovels.

## Background Facts

Because the majority opinion does not include all facts necessary for the proper disposition of this appeal, the material facts and their significance are restated below.

In 2008, the Hovels hired 7677 to build a house for them. Batzri was 7677's sole shareholder, director, and president. After discovering numerous construction defects in the home, the Hovels filed a lawsuit in February 2010 against 7677 and others, asserting breach of contract, violation of the Deceptive Trade Practices Act, and other related causes of action. 7677 subsequently failed to pay its franchise tax and thus forfeited its charter on March 25, 2011, and its corporate privileges on July 29, 2011.

Almost two years after 7677's forfeiture of its charter, the case was tried to a jury on March 18, 2013. 7677 did not appear at trial. The trial court therefore granted a default judgment against 7677 on March 28, 2013, and the trial proceeded against other defendants. The jury found that 7677, alone among the several defendants, committed fraud and statutory fraud against the Hovels, and it awarded them $59,000 in compensatory damages to repair their home. The jury also found that 7677 made a negligent misrepresentation on which the Hovels justifiably relied and was 100% liable for any negligent misrepresentation, and it awarded the Hovels $59,000 for "[t]he difference . . . between the value of what

the Hovels received in the transaction and the purchase price or value given." It also awarded them $183,000 for "[t]he economic loss . . . otherwise suffered in the past as a consequence of the Hovels' reliance on the misrepresentation."

On April 29, 2013, the trial court rendered its final judgment memorializing the default judgment against 7677 and incorporating by reference the jury charge and the jury findings, which the court acknowledged it had "received, filed, and entered of record." The judgment stated that it "finally disposes of all claims and all parties and is appealable," and it ordered that execution issue against 7677.

On July 24, 2013, the Hovels filed this suit against Batzri personally, alleging that he had fraudulently transferred assets to avoid paying the judgment against 7677 and that he could be held personally liable for 7677's judgment debt under Tax Code section 171.255. Following the filing of the underlying suit against him personally, on August 2, 2014, Batzri sought to reinstate 7677's charter, shorn of the judgment debt to the Hovels.

On cross-motions for summary judgment, the trial court granted summary judgment in favor of 7677 and Batzri, holding him not liable for 7677's judgment debt to the Hovels, and it denied the Hovels' cross-motion on the ground that the "debt" was incurred before the forfeiture of corporate privileges—an error the majority repeats.

**Discussion**

The resolution of this case turns on whether 7677's "debt" to the Hovels was the judgment debt incurred by 7677 two years after it forfeited its charter or an unliquidated "debt" created by 7677's wrongful acts of fraud and negligent misrepresentation committed by 7677 before it forfeited its charter and several years before that "debt" was reduced to the Hovels' tort claims against 7677 and tried to a money judgment against the corporation. The trial court and the majority say that 7677's "debt" to the Hovels was "created or incurred" at the time 7677 committed its wrongs of negligent misrepresentation and fraud against the Hovels, before 7677's forfeiture of corporate privileges, and thus Batzri is not liable for the debt. However, seventy years of construction of section 171.255 and its predecessor statute say that the debt was incurred when the Hovels' claims against 7677 were reduced to an enforceable liquidated obligation of the company in the form of a money judgment two years after 7677 forfeited its corporate charter. Following the law as historically developed, I would construe section 171.255 in accordance with its language and express purpose, and I would hold Batzri personally liable for the damages awarded to the Hovels in their judgment against 7677. The majority does the opposite.

## Construction of Tax Code Section 171.255

The first questions to be answered in construing Tax Code section 171.255 are (1) what is a "debt of the corporation" and (2) when is a debt "created . . . or incurred" for purposes of the section? The final question is whether the money judgment obtained by the Hovels against 7677 two years after forfeiture of its corporate charter is a post-forfeiture debt of 7677 enforceable against Batzri, the sole officer and director of 7677, under section 171.255.

### A. Standard of Review of Statutory Construction

The primary objective of a court in construing a statute is to give effect to the legislature's intent. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006); *Tex. Prop. & Cas. Ins. v. Brooks*, 269 S.W.3d 645, 649 (Tex. App.—Austin 2008, no pet.). In deriving intent, we rely on the plain meaning of the statutory text unless a different meaning is supplied by legislative definition or is apparent from the context, or the construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *Brooks*, 269 S.W.3d at 649.

Texas has long recognized that "the entire statute is intended to be effective," that "a just and reasonable result" is intended, and that the "public interest is favored over any private interest." TEX. GOV'T CODE ANN. § 311.021(2), (3), (5) (West 2013); *see Brooks*, 269 S.W.3d at 649. Therefore, in construing a statute, "we give effect to all its words" and avoid rendering any

redundant or "mere surplusage." *Shumake*, 199 S.W.3d at 287. Under the Texas Code Construction Act, courts are permitted to consider, among other things, (1) the object sought to be obtained by the statute, (2) the circumstances under which the statute was enacted, (3) the legislative history of the statute, (4) common law or former statutory provisions including law on the same and similar subjects, and (5) the consequences of a particular construction. TEX. GOV'T CODE ANN. § 311.023 (West 2013).

**B.     Tax Code Section 171.255**

Tax Code section 171.255 provides, in relevant part:

(a)  If the corporate privileges of a corporation are forfeited for the failure to . . . pay a tax or penalty, *each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due*[1] and before the corporate privileges are revived. *The liability includes liability for any tax or penalty imposed by this chapter on the corporation that becomes due and payable after the date of the forfeiture.*

(b)  The liability of a director or officer is in the same manner and to the same extent as if the director or officer were a partner and the corporation were a partnership.

(c)  A director or officer is not liable for a debt of the corporation if the director or officer shows that the debt was created or incurred:

---

[1]     For simplicity, I have used the terms "pre-forfeiture" and "post-forfeiture" throughout to refer to acts that occurred, in the precise terms of the statute, before and after "the date on which the report, tax, or penalty is due and before the corporate privileges are revived." *See* TEX. TAX CODE ANN. § 171.225(a) (west 2015).

9

(1)     over the director's objection; or

(2)     without the director's knowledge and that the exercise of reasonable diligence to become acquainted with the affairs of the corporation would not have revealed the intention to create the debt.

TEX. TAX CODE ANN. § 171.255 (a)–(c) (West 2015) (emphasis added).

Under subsection 171.255(a), enforceable obligations or "debt[s] . . . created or incurred" before forfeiture of a corporate charter (more precisely, in terms of the statute, created or incurred before the date a tax or penalty was due but was not paid, resulting in forfeiture of the charter) are not enforceable against corporate officers or directors after forfeiture of the charter. *See id.* § 171.255(a). This provision reflects the corporate shield doctrine. *See Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006) ("A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations"); *see Portlock v. Perry*, 852 S.W.2d 578, 582 (Tex. App.—Dallas 1993, writ denied) ("The general rule of corporate law is that officers of a corporation are insulated from personal liability arising from their activities performed in the scope of their duties for the corporation.") (citing *Delaney v. Fidelity Lease Ltd.*, 526 S.W.2d 543 (Tex. 1975)). However, a corporate officer may be held individually liable for a corporation's tortious conduct if he knowingly participates in the conduct or has either actual or

constructive knowledge of it. *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984).

Reflecting these bedrock principles of corporate law, subsection 171.255(b) provides that a director or officer of a corporation may be held personally liable for a debt of the corporation created or incurred after forfeiture of the corporate charter "in the same manner and to the same extent as if the director or officer were a partner and the corporation was a partnership." *See* TEX. TAX CODE ANN. § 171.255(b); TEX. BUS. ORGS. CODE ANN. § 152.304 (West 2012) (In general, "all partners are jointly and separately liable . . . for all obligations of the partnership unless otherwise provided by law."); *see U.S. Rest. Props. Operating L.P. v. Motel Enters., Inc.*, 104 S.W.3d 284, 293 (Tex. App.—Beaumont 2003, pet. denied) (partners are jointly and severally liable for debts of general partnership). However, under subsection 171.255(c) the defendant officer or director must have actual or constructive knowledge of the wrongful acts giving rise to the "tax or penalty" incurred as an enforceable debt after forfeiture and must not have objected to those acts. *See* TEX. TAX CODE ANN. § 171.255(c).

Because an officer or director of a corporation with knowledge of a debt of the corporation wrongfully created or incurred after forfeiture is jointly and severally liable for the debt, the questions of what constitutes a "debt" of the

corporation and when the debt is "created or incurred" are of paramount importance in construing section 171.255.

**C.    The Strict Construction Rule for Construing "Debt . . . Created or Incurred" in Section 171.255(a) and the "Relation-Back" Doctrine**

   **1.     *Schwab* and *Silberstein* and the strict construction rule**

Texas case law prior to this case has consistently defined the "debt" of a corporation, as used in section 171.255, as "any *legally enforceable obligation measured in a certain amount of money* which must be performed or paid within an ascertainable period of time or on demand."  *Taylor v. First Cmty. Credit Union*, 316 S.W.3d 863, 867 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (quoting Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex. Gen. Laws 1734, 1735 (defining "debt" as used in chapter 171 as formerly codified in Tax Code section 171.109(a)(3)), *repealed by* Act of May 2, 2006, 79th Leg., 3rd C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 23) (emphasis added).

*Taylor*, decided in 2010, defined "debt" in the language of a statutory definition added to Tax Code Chapter 171 in 1987 and repealed effective 2008 as part of a recodification of Chapter 171 unrelated to section 171.255.  In doing so, however, it relied on an unbroken history of binding case law construing section 171.255 and defining "debt" as an enforceable financial obligation of the corporation that now dates back seventy years to the Texas Supreme Court case of *Schwab v. Schlumberger Well Surveying Corp.*, 198 S.W.2d 79 (Tex. 1946).

12

In *Schwab*, the Texas Supreme Court construed the language "debt . . . created or incurred" with respect to the predecessor of section 171.255 to determine whether an officer of a corporation that had forfeited its charter could be held personally liable for payment of a promissory note of the corporation—that is, a legally enforceable obligation of the corporation measured in a certain amount of money—that was renewed after forfeiture of the charter. 198 S.W.2d at 80–82; *see Taylor*, 316 S.W.3d at 867. In construing the statute, the supreme court opined that "statutes . . . making the directors or other officers of a corporation liable for its debts where they are guilty of official delinquencies . . . though held to be remedial in some instances, are also penal in nature, and it is generally held that they must be *strictly construed* and cannot be extended beyond the clear import of their language." *Schwab*, 198 S.W.2d at 80–81 (emphasis added).

The court reasoned that the word "created" means "[t]o bring into existence," while the word "incurred" means "[b]rought on, occasioned, or caused." *Id.* Using these definitions, the court held that no new debt of the corporation was created or incurred after forfeiture of the corporate charter and that the predecessor to section 171.255 had "no application to the renewal of obligations arising prior thereto" and therefore did not impose liability on corporate officers for such debts. *See id.* at 81–82. The court refused to hold the officer of the corporation whose charter had lapsed personally liable on the

13

promissory note renewed after forfeiture because the note merely renewed an enforceable financial obligation of the corporation incurred in the regular course of business prior to forfeiture and was not attributable to "official delinquencies." *Id.*

The *Schwab* court explained its construction of section 171.255 in accordance with "the clear import of [its] language" as appropriate to effectuate the purpose of the statute, stating, *"The statute was meant to prevent wrongful acts of culpable officers of a corporation, and was for the protection of the public and particularly those dealing with the corporation." Id.* (emphasis added). The "strict construction" rule pronounced in *Schwab* provides that section 171.255 "cannot be extended beyond the clear import of [its] language" so that the purpose of the statute is achieved: to protect officers and directors of a corporation that has forfeited its charter from joint and several liability for the debts of the corporation only insofar as those debts arose from activities performed in the scope of their duties and, therefore, insulated those officers and directors from personal liability. *See id.* at 81; *see also Portlock*, 852 S.W.2d at 582 (stating general rule of liability of corporate officer). This strict construction rule has been consistently followed through the history of the construction of section 171.255—until now.

Twenty years after *Schwab*, the Texas Supreme Court again read section 171.255 strictly in accordance with its plain language and purpose. In that case, however, it held officers and directors of a franchisee corporation that had forfeited

its charter liable for a liquidated corporate debt of $1,867.58 incurred for the purchase of merchandise for the corporation four years after forfeiture. *See First Nat'l Bank of Boston v. Silberstein*, 398 S.W.2d 914, 915 (Tex. 1966). Citing subsections 171.255(a) and (c), the supreme court stated, "[P]ersonal liability is determined by the acts of [the directors and officers] in consenting to and approving the debts of the corporation where [it] is shown to have come to them in the regular course of business of the corporation" after forfeiture of the corporate charter. *Id.* at 916.

In 1992, the Austin Court of Appeals contrasted statutes imposing a corporate franchise tax—which are to be liberally construed in favor of the taxpayer to effectuate their purpose as revenue statutes—and "statutes making directors and officers liable for corporate debts," like section 171.255, which "must be strictly construed and cannot be extended beyond the clear meaning of their language." *Wilburn v. State*, 824 S.W.2d 755, 760 (Tex. App.—Austin 1992, no writ) (citing *Schwab*, 198 S.W.2d at 81). The *Wilburn* court further pointed out that "because § 171.255 is penal in nature, it must be strictly construed to protect those individuals against whom liability is sought." *Id.* at 760–61. Thus, it held a corporate officer liable under section 171.255 for debts wrongfully created or incurred after the date franchise taxes were due. *Id.* at 761–62. The next year, the Austin Court of Appeals, using the same reasoning and reciting the same law in

essentially the same situation, reached the same result. *Davis v. State*, 846 S.W.2d 564, 570–72 (Tex. App.—Austin 1993, no writ) (strictly construing statute and holding corporation's sole shareholder, president, and director liable for unpaid franchise taxes, penalties, and interest incurred in corporation's name after forfeiture of corporate privileges).

Up until the present, section 171.255 has consistently been strictly construed to ensure that an officer or director of a corporation that has forfeited its corporate charter is held personally liable only for a "debt" of the corporation, narrowly defined as an enforceable liquidated obligation of the corporation that is "created or incurred" after forfeiture for a wrongful act of the corporation of which the defendant had knowledge. *See In re Trammell*, 246 S.W.3d 815, 821–22 (Tex. App.—Dallas 2008, pet. denied) (refusing to extend liability under section 171.255 beyond meaning of language and applying strict construction rule in holding that directors and officers of corporation may lose protection from liability provided by corporate form and become liable in same manner and to same extent as partner in partnership); *PACCAR Fin. Corp. v. Potter*, 239 S.W.3d 879, 882–83 (Tex. App.—Dallas 2007, no pet.) (strictly construing statute and holding officers and directors of corporation that had forfeited charter not liable for corporate debt created at time when they were not officers and directors); *cf. Williams v. Adams*, 74 S.W.3d 437, 440–41 (Tex. App.—Corpus Christi 2002, pet. denied) (explaining that strict

16

construction "refuses to expand the law by implications or equitable considerations," but rather confines interpretation of law to cases within its letter and spirit, resolving reasonable doubts against "applicability . . . to [a] particular case"; observing that purpose of statute was to prevent "wrongful acts of culpable officers"; and refusing to attribute to corporate officers "negligence liability" for "unintentional torts" of corporation).

In none of this history is there any indication that the term "debt" in section 171.255(a) is to be construed broadly so that it is "created or incurred" when the corporation commits a wrongful act, as the majority holds. Nor is there any indication that section 171.255 is to be construed in accordance with the criminal law rule of lenity to protect corporate officers and directors from personal liability for wrongful acts of the corporation of which they had knowledge, including intentional torts of the corporation, that result in a liquidated corporate obligation after forfeiture of the corporate charter. Rather, the established law is exactly the opposite.

The requirements of strict construction do, however, create a tension between section 171.255's protection of corporate officers from liability for enforceable obligations of the corporation created or incurred as a result of the corporate officers' activities within the scope of their duties in creating enforceable obligations of the corporation before forfeiture that are liquidated after forfeiture

and its imposition of personal liability on corporate officers for liquidated debts of the corporation incurred after forfeiture as a result of wrongful acts of the corporation prior to forfeiture. The courts have resolved this tension by developing the "relation-back doctrine."

### 2. *Curry* and *Cain* and the "relation-back doctrine"

*Schwab*'s strict construction rule requires both (1) that the phrase "debt . . . created or incurred" in section 171.255(a) must be strictly construed to hold "culpable officers" and directors of a corporation liable only for "debts . . . created or incurred" after forfeiture of the corporate charter to prevent wrongful acts of the corporation and (2) that the term "debt" must likewise be strictly construed as a legally "enforceable obligation measured in a certain amount of money," in spite of the reality that not all lawful debts of a corporation are liquidated or reduced to a sum certain prior to forfeiture.

In 1994, in *Cain v. State*, the Austin Court of Appeals addressed the courts' resolution of the tension, discussing at length the historical development of the strict construction of section 171.255. 882 S.W.2d 515, 516–18 (Tex. App.—Austin 1994, no writ). In reciting that history, starting with *Schwab*, the *Cain* court stated, "In legal usage, the word 'debt' refers ordinarily to a *liquidated* money obligation that is legally enforceable by the owner; that is to say, the legally enforceable obligation must be for a sum certain in money." *Id.* at 516 n.1 (citing

*Seay v. Hall*, 677 S.W.2d 19, 23 (Tex. 1984)) (emphasis in original). It pointed out that *Schwab* had concerned "a corporate obligation on open account—a liquidated sum and therefore an obvious 'debt' in legal usage.'" *Id.* at 516. However, some corporate debts lawfully incurred or created in the regular course of business prior to forfeiture were not reduced to a sum certain until after forfeiture. Therefore, the question arose whether corporate officers could be held liable for those debts, given the strict legal definition of "debt" applicable to section 171.255 cases.

The *Cain* court focused its analysis of this problem on *Curry Auto Leasing, Inc. v. Byrd*, 683 S.W.2d 109 (Tex. App.—Dallas 1984, no writ), which it credited with first explicitly applying the rule of "strict construction" of the term "debt" employed in *Schwab* together with "the relation-back doctrine" to determine whether the officers and directors of a corporation that had forfeited its corporate privileges could be held liable under section 171.255 for a contractual obligation of the corporation that was entered in the scope of their duties before forfeiture of the corporate charter but was not liquidated until after forfeiture. *Id.* at 517.

The relation-back doctrine, as expressed in *Cain* and *Curry*, holds that "[w]hen parties enter into a contract the law presumes they intend the consequences of its performance. It follows that performance or implementation of the contractual provisions *relate back* to and are authorized at the time of

19

execution of the contract." *Id.* (quoting *Curry*, 683 S.W.2d at 112) (emphasis added in *Cain*).

In *Curry*, a corporation entered a car-lease agreement in the regular course of business and breached it before forfeiture of its corporate charter, but the sums owed to the non-breaching party were not calculable until after the sale of the leased car, and that sale did not occur until after forfeiture of the corporate charter; thus, although an enforceable lease contract was entered in the regular course of business before forfeiture, no liquidated obligation came into existence until after forfeiture. *See Curry*, 683 S.W.2d at 110–11. The *Curry* court held that the officers and directors were not liable for the deficiency on the sale, reasoning that "performance or implementation of the contractual provisions *relate[d] back* to and [were] authorized at the time of execution of the contract." *See Cain*, 882 S.W.2d at 517 (quoting *Curry*, 683 S.W.2d at 112). In other words, the debt incurred was within the scope of the officers' duties at the time it was created. Thus, for purposes of section 171.255, the contractual debt was created or incurred on the date of execution of the car-lease contract—which was a legally enforceable agreement to pay money satisfying the "strict construction" of the term "debt"— and was not enforceable against corporate officers and directors after forfeiture of the corporate charter. *Curry*, 683 S.W.2d at 112.

The *Cain* court observed, "Other decisions have followed *Curry* in its application of the rule of 'strict construction' and the relation-back doctrine. In these decisions also, the corporation breached its contract before forfeiture but damages were not calculable or liquidated until after forfeiture of corporate privileges." 882 S.W.2d at 517 (citing *McKinney v. Anderson*, 734 S.W.2d 173 (Tex. App.—Houston [1st Dist.] 1987, no writ); *River Oaks Shopping Ctr. v. Pagan*, 712 S.W.2d 190 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Rogers v. Adler*, 696 S.W.2d 674 (Tex. App.—Dallas 1985, writ ref'd n.r.e.)). The court observed:

> A common feature of *Curry* and the subsequent decisions is they (1) *assume* the word "debt" carries a narrow, restricted meaning of a *liquidated* money obligation that is legally enforceable but (2) apply the relation-back doctrine to hold against personal liability of officers and directors *notwithstanding* that assumption. Unless the courts acted under that assumption, the relation-back doctrine is meaningless.

*Id.* (emphasis in original).

The *Cain* court stated, "All the relevant decisions after *Schwab* turn on the rule of statutory construction known as the 'strict construction' rule coupled with the relation-back doctrine." *Id.* It pointed out,

> *Schwab* adhered to the narrow or strict meaning of the word "create" and operated, moreover, on the assumption that the word "debt" also was similarly restricted to its technical meaning of a liquidated obligation that was legally enforceable against the corporation. The subsequent decisions mentioned previously also operated on that assumed meaning in applying the relation-back doctrine.

21

*Id.* at 518.

*Cain* itself, however, like this case, presented the *opposite* situation from that in *Curry* for which the relation-back doctrine was devised—one in which a liquidated financial penalty was incurred by a corporation after forfeiture of its charter for *wrongful acts* of the corporation that occurred prior to forfeiture. In *Cain*, after ordering an oil-well operator corporation to plug a number of oil wells, which it failed to do, the Texas Railroad Commission authorized the expenditure of State funds to plug the wells. *Id.* at 516. Six months later, the corporation forfeited its corporate charter for failure to file its franchise-tax report. *Id.* Subsequently, the Commission paid nearly $50,000 to plug the wells and then sought to collect the state funds it had spent from Cain, an officer and director of the corporation. *Id.*

The court observed that Cain was "contend[ing] for a liberally expanded interpretation of the words 'debt' and 'create' so that they encompass legal obligations of all kinds, rather than liquidated money obligations only"—exactly like Batzri and the majority in this case. *See id.* at 519. But, the court concluded,

> So far as we are able to find, the word "debt" as used in [section 171.255] has never been thought to include an obligation that is unliquidated. Indeed, it is difficult to see how such a meaning could be assigned the word if it is required to be construed strictly, that is to say, narrowly, literally, and technically.

22

*Id.* That being the case, the *Cain* court held that the relation-back doctrine did *not* apply to protect Cain from liability under section 171.255 for the penalty incurred after forfeiture based on the wrongful acts of the corporation before forfeiture. Notably, with respect to this case, it did not describe the strict construction rule in terms of the rule of lenity but in terms of its opposite.

Thus, under *Curry* and its progeny, money owed, or a liquidated debt incurred after forfeiture of a corporate charter on a legally enforceable contractual obligation of a corporation *lawfully* created in the exercise of corporate officers' duties before forfeiture relates back to the creation of the enforceable obligation, even though the debt is not liquidated or not fully liquidated before forfeiture, and corporate officers are not personally liable for the debt. And under *Cain* and *its* progeny, financial penalties and money judgments incurred as enforceable liquidated obligations of a corporation after forfeiture of its corporate charter due to the *wrongful acts* of the corporation, occurring either before or after forfeiture, do *not* relate back to the date of the unlawful act that generated the post-forfeiture penalty or judgment, and liability for the debt may be imposed upon the corporation's culpable corporate officers and directors under section 171.255.

### 3. Historical application of the "strict construction" rule and the "relation-back" doctrine

Since the time of *Curry* and *Cain*, the Texas appellate courts have consistently applied the strict construction rule and the relation-back doctrine as stated above.

In 1994, two months before deciding *Cain*, the Austin Court of Appeals, strictly construing section 171.255, held that a corporation's directors and officers were personally liable for penalties assessed against the corporation after forfeiture of its charter, holding that the "debt" was created or incurred when the Texas Railroad Commission assessed the penalties. *Jonnet v. State*, 877 S.W.2d 520, 524 (Tex. App.—Austin 1994, writ denied). In *Jonnet*, as in the subsequent decision in *Cain*, the court held that, for purposes of section 171.255(a), the corporation's debt for failure to pay an administrative penalty assessed by the Texas Railroad Commission was "created or incurred" on the date the Commission entered an order directing the corporation to pay the administrative penalty, after forfeiture, and not on the date, nearly four years earlier, when the corporation began violating an administrative rule requiring that oil wells be plugged. *Id.* at 523–24. The court refused to apply the relation-back doctrine, holding that the penalties assessed by the Commission were based not just on the corporation's initial violation of a Commission rule on a given date, but on its "*ongoing* violation of [the rule], which continued day after day for nearly four years." *Id.* at 524. Thus, it held that, unlike

24

cases to which the relation-back doctrine applies "in which the debt can be said to relate back to a single date—the date of the written instrument [creating the debt]—the conduct underlying the Commission's order is of a continuous nature, with no *single* date to which the penalty can relate back." *Id.* The court held the officers and directors liable for the penalty in their individual capacities under section 171.255(a). *Id.*

The *Jonnet* concurrence—authored by the same judge who would author *Cain* two months later—would have reached the same conclusion on different grounds by inquiring into the legislature's intended meaning of the word "debt" in section 171.255. The concurrence pointed out that the word "debt" can have various meanings; "[i]n legal usage, however, the word 'debt' carries a narrower, restricted, and technical meaning," namely "a *liquidated* money obligation that is legally enforceable." *Id.* at 525 (Powers, J., concurring) (emphasis in original) (citing *Seay*, 677 S.W.2d at 23; 26 C.J.S. *Debt* 6 (1956)). It then pointed out that "[a]bsent legislative intent to the contrary, or other evidence of a different meaning, legal terms in a statute are presumed to have been used in their *legal* sense." *Id.* (citations omitted). Moreover, "the word 'debt' must be confined to its narrow, restricted, and technical or legal sense because the statute and its operation are 'penal in nature.'" *Id.*

The *Jonnet* concurrence cited *Schwab*, 198 S.W.2d at 81, and *Curry*, 683 S.W.2d at 112, as both employing the strict legal definition of "debt" and observed that "[o]ther decisions have followed *Curry* and *Schwab* with almost no real discussion of the 'strict construction' rule and the relation-back doctrine," but, in each, "the corporation had breached its contract before forfeiture but the resulting damages remained unliquidated until after forfeiture of corporate privileges." *Id.* at 525–26. Finally, it pointed out that "[a] chief feature of these decisions, as in *Curry*, is their *assumption* that the word 'debt' carries its narrow, restricted technical or legal meaning of a liquidated money obligation that is legally enforceable." *Id.* at 526. The relation-back doctrine was thus required to preserve the "strict construction" rule of *Schwab* that a "debt" for which corporate directors and officers may be held liable under section 171.255 is a liquidated money obligation that becomes legally enforceable after forfeiture of the corporate charter and not one incurred before that. *See id.* Thus, the *Jonnet* concurrence's application of the "strict construction" doctrine is, like *Cain*'s, exactly the opposite of the majority's in this case.

Since these cases were decided, the Texas courts have consistently, until now, defined the term "debt" in section 171.255(a) as a legally enforceable liquidated obligation, and they have consistently applied the relation-back doctrine to save officers and directors from liability under 171.255 for legally enforceable

financial obligations of a corporation created or incurred in the scope of their duties before forfeiture of the corporate charter, even if those obligations were not liquidated until after forfeiture. But they have never held that section 171.255 protects culpable officers of a corporation from liability for penalties or judgments incurred after forfeiture as enforceable liquidated financial obligations of the corporation due to wrongful acts of the corporation before or after forfeiture.

*Skrepnek v. Shearson Lehman Bros., Inc.,* 889 S.W.2d 578 (Tex. App.—Houston [14th Dist.] 1994, no writ), is illustrative. There, the Fourteenth Court of Appeals, strictly construing section 171.255, held Skrepnek, a broker and officer of Panterra Resources, Inc. ("PRI"), individually liable in fraud under section 171.255 for a judgment rendered against PRI after the forfeiture of PRI's corporate charter on a debt owed to Shearson for stocks purchased by Shearson for PRI after PRI's forfeiture of its charter. *Skrepnek*, 889 S.W.2d at 580–82. PRI represented that it would pay brokerage fees and margin interest that were not paid, resulting in a loss to Shearson. *Id.* at 580. The court affirmed the judgment, finding that Skrepnek was a participant in the post-forfeiture fraud. *Id.* at 580–82.

Similarly, in *Taylor*, a lender brought an action against an automobile-dealership corporation and its officer-director for the balance due on defaulted retail automobile installment contracts. *See Taylor*, 316 S.W.3d at 865. The lender alleged, and the trial court found, that the dealership breached its contractual

obligations to the lender by failing to provide good title to the motor vehicles the dealership sold to its customers under the contracts assigned to the lender and by committing other similar acts. *Id.* The dealer's wrongful acts breached its contractual obligations to both the vehicle-purchaser and the lender and provided the vehicle-purchaser with a defense against the lender as the holder of the retail installment agreement. *Id.* The corporation's privileges were subsequently revoked for failure to file a required franchise tax report. *Id.* The lender sued the corporation and the corporation's officer-director, Taylor. Taylor sought application of the relation-back doctrine to protect himself from liability for the money judgment entered against him in favor of the lender. *Id.* at 866–67. The trial court held against him, and, refusing to apply the relation-back doctrine, the appellate court affirmed the trial court's judgment holding Taylor personally liable for the dealership's wrongful acts. *Id.*

By contrast, *Beesley v. Hydrocarbon Separation, Inc.* falls into the line of cases in which the relation-back doctrine *does* apply and corporate officers and directors are not held liable for corporate obligations liquidated after forfeiture. In *Beesley*, the Dallas Court of Appeals held that the promoter and officer of a corporation that had forfeited its corporate charter could not be held personally liable for the corporation's breach of a consulting agreement entered into by the corporation and its former owner before forfeiture. 358 S.W.3d 415, 423 (Tex.

28

App.—Dallas 2012, no pet.).  The court explicitly drew a distinction between the type of debt incurred in *Cain* (a penalty for "costs of plugging oil wells" that corporate officers were obligated by law to plug) and *Taylor* (damages for "breaches of warranty and failure to provide good title to automobiles"), which could not be "measured in a certain amount of money" at the time of contracting, and the debts incurred in *Rogers*, 696 S.W.2d 674 (losses due to post-forfeiture breach of purchase contract entered into long before forfeiture), *Curry*, 683 S.W.2d 109 (corporate debts arising from failure to adhere to leasing contract), and the case at hand, *Beesley* itself (breach of employment agreement)—each of which involved a contract that was entered in the regular course of business prior to forfeiture and "specified both the amount and the date due, so that at the time of contracting, a 'debt' was 'created' for purposes of section 171.255." *Id.* at 423 n.7.

The distinction drawn in *Beesley* between types of debt to which the relation-back doctrine does and does not apply is informative here. It places the judgment entered against 7677 squarely within the category of liquidated judgment debts incurred by a corporation after forfeiture of the corporate charter as a result of acts of wrongdoing by the corporation that occurred prior to forfeiture. The relation-back doctrine does not apply to such acts of wrongdoing, and corporate officers and directors with knowledge of the wrongdoing may be held personally liable for the corporate debt under section 171.255.

I agree with the law as set out in *Beesley* and the other foregoing cases and find in them the correct construction of section 171.255. Thus, I disagree with the majority's unique construction of section 171.255. Because the scenario in *Cain* and its progeny—in which the relation-back doctrine was held not to apply—is materially the same as here, I would apply the same reasoning as in *Cain*, and I would hold that the debt in this case was incurred when the Hovels obtained a legally enforceable liquidated money judgment against 7677 two years after forfeiture of 7677's corporate charter for its wrongful acts of negligent misrepresentation and fraud against them prior to forfeiture. Therefore, I would hold that Batzri, as 7677's sole officer and director, is personally liable to the Hovels for that debt—exactly contrary to the majority opinion, but consistent with *Schwab*, *Schlumberger*, *Curry, Cain*, and their progeny.

**D.    The Majority's "Strict Construction" of Tax Code Section 171.255 Under the "Rule of Lenity"**

The majority opinion contrasts sharply with the foregoing cases. The majority begins its analysis of Tax Code section 171.255 by characterizing *Schwab* and *Curry* as support for a subtly but foundationally corrosive argument. It states, "Although the statute imposes civil disability, Section 171.255 of the Tax Code operates as a *penal statute*" and "[b]ecause Section 171.255 is a penal statute, *we must 'strictly construe' any ambiguity in favor of the party penalized by it.*" Slip Op. at 8 (citing *Schwab* and *Curry*) (emphasis added).

30

As shown above, neither *Schwab* nor *Curry* characterizes section 171.255 as a penal, or *criminal*, statute as opposed to a civil one, or as an *ambiguous* statute to be construed in favor of culpable defendants. *Schwab* says that "statutes . . . making the directors or other officers of a corporation liable for its debts where they are guilty of official delinquencies . . . though held to be *remedial* in some instances, are *also penal in nature,* and it is generally held that *they must be strictly construed and cannot be extended beyond the clear import of their language*." 198 S.W.2d at 80–81 (emphasis added). There is no assertion that section 171.255 is a criminal statute, no mention of any ambiguity in its language, and no mention that it is to be strictly construed in favor of culpable defendants. To the contrary, *Schwab* holds that the statute is "remedial . . . and *also penal* in nature" and that such statutes "cannot be extended beyond the clear import of their language." *Id.* And *Curry* and *Cain*, as well as the other cases cited above, all carry forward the rule of *Schwab* that the term "debt" in section 171.255 must be strictly construed as a liquidated financial obligation of a corporation, merely adding the relation-back doctrine to this definition so that the corporate debt relates back to the lawful creation of the enforceable contractual obligation and corporate officers and directors are not personally liable for any part of the lawfully incurred debt that is liquidated after forfeiture.

31

Nevertheless, undeterred by the text of *Schwab* and *Curry*, the majority states, "*'Strict construction,' in the context of construing a penal statute, does not mean that each individual term must be read narrowly*. It means that, when a statutory provision is unclear, the statute is read in its entirety in a way that benefits the party facing the possibility of a penalty. . . ." and that "strict construction of the entire statute, as opposed to strict construction of an isolated word, might require that an individual word be read broadly to accomplish a construction in favor of the party facing the penalty."[2] Slip Op. at 10–11 (emphasis added; citations omitted). *Schwab*, however, requires that section 171.255 be strictly construed to protect the *public*, rather than the corporate *wrongdoer*, stating, "The statute was meant to prevent wrongful acts of culpable officers of a corporation, and was for the protection of the public." 198 S.W.2d at 81–82.

The majority bolsters its mischaracterization of *Schwab* and *Curry* with additional misleading and incorrect citations, beginning with a 1964 case that followed *Schwab—Sheffield v. Nobles*, 378 S.W.2d 391 (Tex. Civ. App.—Austin 1964, writ ref'd). The majority quotes from *Sheffield* the phrase that section

---

[2]   "When I use a word," Humpty Dumpty said…, "it means just what I choose it to mean—neither more nor less."
"The question is," said Alice, "whether you can make words mean so many different things."
LEWIS CARROLL, ALICE THROUGH THE LOOKING GLASS.

171.255 is a statute that is "highly penal in nature and one which could produce great hardship." Slip Op. at 8. It does not quote the *Sheffield* court's following statement that it had found no indication "that the statute should not be enforced according to its terms" and that "[t]he liability fixed by the statute under facts present here is the liability of partners." *Sheffield*, 378 S.W.2d at 392 (emphasis added). In other words, it does not reference the *Sheffield* court's recognition that section 171.255 is to be construed strictly, in accordance with its plain, unambiguous language so that it imposes on a defendant officer or director of a corporation that has forfeited its charter the same civil liability that a partner has to persons wronged by the partnership, just as the statute requires. *See* TEX. TAX CODE ANN. § 171.255 (b), (c). *Sheffield* does not support the majority's construction of section 171.255 as an ambiguous penal statute meant to be construed broadly to protect culpable corporate officers. Like *Schwab*, it contradicts that construction.

The majority reaches the real crux of its argument, however, only in a footnote, citing a treatise of its choice instead of case law or the Texas Code Construction Act, and stating, "*This rule [of strict construction] functions much like the rule of lenity*." Slip Op. at 8 n.7 (emphasis added). It explains: "The rule of lenity is 'sometimes cast as the idea that "[p]enal statutes must be construed strictly" and sometimes as the idea that, if two rational readings are possible, the

33

one with the less harsh treatment of the defendant prevails.'" *Id.* at 9 n.7 (quoting

ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF

LEGAL TEXTS 296 (2012)). It then cites the same treatise for the proposition that

"[t]he rule 'applies not only to crimes but also to civil penalties.'" *Id.* at 9 n.7

(quoting SCALIA & GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS

at 297).

And for precedential support for these propositions in Texas law, it turns to a

concurrence in a Texas Court of Criminal Appeals case, *Cuellar v. State*, 70

S.W.3d 815 (Tex. Crim. App. 2002) (Cochran, J., concurring), in which the

concurring judge would have applied the rule of lenity to an ambiguous criminal

statute—not to an unambiguous civil statute. It is worth taking a look at *Cuellar*

for the actual treatment of the rule of lenity in Texas law.

In *Cuellar*, Judge Cochran joined the majority opinion, but she also

concurred, adding that, in a case like *Cuellar*, in which a criminal statute is

ambiguous, "the Rule of Lenity requires this Court to adopt the less harsh

interpretation of penal statutes." *Id.* at 821. She added, "Fortunately, Texas courts

rarely need resort to the Rule of Lenity to construe its penal provisions, due to the

drafting of the Texas Penal Code with clarity, precision, and straightforward, well-

defined language." *Id.* at 822. Thus, it is clear that Judge Cochran never

conceived of the rule of lenity as applicable to a civil statute, or an unambiguous

one, or one that must be strictly construed. Moreover, even as stated, her *Cuellar* concurrence drew a sharp dissent from fellow Court of Criminal Appeals Judge Michael Keasler. Judge Keasler disagreed that the rule of lenity is available in Texas as a first resort to resolve an ambiguity in a criminal statute, much less to construe an unambiguous civil liability statute. *See id.* at 837–38 (Keasler, J., dissenting). After observing that Judge Cochran had cited "an 1886 Texas case and a 1955 United States Supreme Court case as authority," Judge Keasler stated, "[B]oth our Court and the United States Supreme Court have since greatly limited the application of that rule." *Id.* at 836–37. He pointed out how rare its use was *in the criminal law* and that it had been superseded in that law in almost all cases by the Code Construction Act. *Id.* at 837–38.[3] Nevertheless, the majority forces this

---

[3]      Judge Keasler pointed out:

> Today, our leading case on statutory construction [of the Penal Code] is *Boykin v. State*. In *Boykin*, we explained that if the meaning of the statutory text should have been plain to the legislators who voted on it, we should give effect to that meaning. But if the plain language is ambiguous or leads to an absurd result, we should then consider extratextual factors. The extratextual factors include those listed in the Code Construction Act and mentioned above. No mention is made in *Boykin* of the rule of lenity. A year after we handed down *Boykin*, we analyzed a statute's meaning by following the method outlined in *Boykin*, specifically rejecting the dissent's reliance on the rule of lenity. That does not mean that the rule of lenity no longer exists in Texas. But it should not be used until all other avenues have been exhausted and a statute's meaning remains ambiguous.

*Cuellar v. State*, 70 S.W.3d 815, 837–38 (Tex. Crim. App. 2002) (Keasler, J., dissenting).

rule of construction, as it understands it, upon the Tax Code as a rule of *first* resort for construing *unambiguous civil liability* statutes, thus undermining the substantial body of Texas precedent construing section 171.255 consistently over the last seventy years.

**E.    The Majority's Analysis of the Case Law Construing Section 171.255 and the Effect of the Enactment and Repeal of the Statutory Definition of "Debt"**

Two crucial errors drive the majority's application to this case of the rule of lenity, miscalled "strict construction."

First, recognizing that section 171.255 has been consistently "strictly construed," in accordance with the rule in *Schwab*, it purports to follow that rule, but, instead of following the plain language of section 171.255 and *Schwab* and the other cases construing and applying the requirements of the rule of strict construction—which would lead it to the opposite result from the one it believes warranted in this case—it redefines "strict construction" to mean its exact opposite, "the rule of lenity."  It then construes section 171.255—an unambiguous civil statute—as an ambiguous criminal statute to which it claims the rule of lenity applies as a rule of construction of the first resort.  And, even though the Texas courts have consistently held that the rule of strict construction requires a narrow definition of the terms of section 171.255, the majority holds that the rule (being really the rule of lenity) requires extremely broad construction.  Finally, it

36

maintains that the Texas courts have actually construed section 171.255 as the majority currently does except when they have gotten pulled off track by the statutory definition of "debt" in Tax Code chapter 171, which is now repealed and therefore inapplicable.

Second, because the proper construction of section 171.255 turns on when the "debt of the corporation [was] created or incurred," TEX. TAX CODE ANN. § 171.255(a), the majority not only has to redefine these terms broadly, especially the term "debt" in section 171.255, to conform to its conception of the requirements of the rule of lenity, but it also has to reconstruct the rationale and application of the relation-back doctrine. It does this in two ways. It declares that the creation of a "debt" relates back to the wrongful acts of culpable officers prior to forfeiture so that they are protected from liability for those acts under section 171.255. It then declares that the case law has interpreted the terms of section 171.255 and the relation-back doctrine in accordance with the rule of lenity, as the majority itself does, except from the period from 1987, when the legislature arbitrarily introduced a new definition of the term "debt" into the case law—one requiring that the term be construed narrowly rather than broadly in favor of defendants in accordance with the rule of lenity—until 2008, when, just as arbitrarily, the legislature withdrew the definition, eradicating it and leaving the

courts—namely this one—free to reconstruct the definition of the terms of the statute at will and thus to restore the rule of lenity.

The majority's argument is analyzed below.

### 1.      The three stages of construction of section 171.255

The majority divides the historical development of the construction of section 171.255 into three sections.  The first it calls the "pre-1987 era," i.e., the period before the legislature incorporated a statutory definition of "debt" into Tax Code Chapter 171.  It describes this period as one in which "debts were considered created or incurred at the time the relevant contractual obligations were incurred" and unliquidated debts "were permitted to relate back to the contractual obligations."  Slip Op. at 12.  At that time, the majority opines, "strict construction, in the sense of achieving a narrow application of a statute as a whole was first applied in a forfeiture case in *Schwab*."  *Id.* at 13.  "Strict construction," so defined, the majority states, "resulted in the officers of the corporation not having personal liability for the entity's debts, consistent with the previously announced view that 'before any one should be punished, either in a criminal or a civil action, . . . the offense should be clearly defined' and 'doubt as to the intention of the legislature should be resolved in favor of the defendant.'"  *Id.* at 13–14.  In support of its argument, the majority cites an inapposite 1892 case, *Gulf, C. & S.F. Ry. Co. v. Dwyer*, 19 S.W. 470 (Tex. 1892), on the construction of ambiguous statutes,

which contains nothing that supports its construction of section 171.255, an unambiguous statute.

The majority's reconstruction of the second stage of section 171.255 interpretation, "1987," is equally unprecedented. The majority describes 1987 as the year "when the Tax Code was amended to include a narrow definition of 'debt,' limiting it to a liquidated obligation." *Id.* at 12. Prior to that, the majority opines, the term "debt" in section 171.255(a) was ambiguous. *Id.* at 17. As support, it cites another 1892 case and a 1938 case, both of which long predated section 171.255 and neither of which supports its claim. *See id.* (citing *Barber v. City of E. Dallas*, 18 S.W. 438, 439 (Tex. 1892) (construing term "debt" in "common parlance" as including liability for damages resulting from tortious acts, while observing that term "has been differently defined, owing to the subject-matter of the statutes in which it has been used" and "ordinarily . . . imports a sum of money arising upon a contract," but may "include all obligations to pay money, whether arising from contract or implied by law, as a compensation for damages"), and *Reconstruction Fin. Corp. v. Gossett*, 111 S.W.2d 1066, 1073 (Tex. 1938) (following *Barber* in declaring that term "debt" is used in courts of this state "in a general, and not in a restricted, sense," and "has been differently defined, owing to the subject matter of the statutes in which it has been used," ordinarily "import[ing] a sum of money arising upon a contract," but, in its more general

sense, meaning "that which one person is bound to pay to or perform for another")).

Notably, both of the pre-section 171.255 cases cited by the majority as support for its broad reading of the term "debt" in section 171.255(a) are entirely compatible with established law construing section 171.255 strictly as an enforceable financial obligation for purposes of that section of the Tax Code, and neither case is relevant to show any ambiguity in the definition of the terms of section 171.255 or to meet any requirement that the term "debt" in that statute be construed broadly. Nevertheless, the majority opines, "By adding the narrow statutory definition, the term was no longer ambiguous or subject to broad interpretation by the courts." Slip Op. at 18.

The third period the majority views as pivotal, "post-2008," is characterized by the majority—again without precedent—as a time in which, after repeal of the statutory definition of "debt" in Tax Code Chapter 171, the "basis for rejecting the 'relation-back' doctrine is removed," and, once again, "the pre-1987 view of this statute, which focused on broadly construing 'created' and 'incurred' and allowed unliquidated debts to relate back to the contractual obligations from which they arose, controls." *Id.* at 21, 12. At that time, the majority opines, "the 'relation-back' doctrine reemerged to avoid individual liability for pre-forfeiture acts that lead to post-forfeiture judgments." *Id.* at 21.

## 2. The effect of repeal of the statutory definition of "debt"

The majority's reconstructed three-stage history of the construction of section 171.255 turns not only upon the reinterpretation of the term "strict construction" as "the rule of lenity" but also upon the enactment of the statutory definition of "debt" and its repeal as marking a sharp turn in the proper analysis of the statute. To reach this conclusion, however, the majority must not only reconstruct the case law, as set out below, but it must also conclude "that the repealed statutory definition is not only no longer binding but, at this point, has become immaterial to our analysis of Section 171.255." Slip Op. at 25. It supports this claim by again picking a canon of construction of its choice from the treatise *Reading Law* by Scalia and Garner, namely a rule which states, "'When a statute is repealed, it falls irretrievably into oblivion,' and has no effect." *Id.* (quoting SCALIA & GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS at 334). "As a result," the majority opines, "we are not constrained by the narrow definition of a 'debt' as a liquidated sum certain. Instead, we look to the other pre- and post-repeal cases to analyze when 7677's debt was created or incurred." *Id.* at 25–26.

The Texas Supreme Court—whose instructions the majority essentially ignores—has, however, never held that whenever any statute, much less a general statutory definition applicable to many diverse statutes, has been repealed it "falls irretrievably into oblivion." Instead, Texas law holds that when a statute has been

41

re-codified and text omitted, with no clear statement by the Legislature that a substantive change is intended, and with no replacement by a clearly conflicting statement of law, the courts must "diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy." *Energy Serv. Co. of Bowie, Inc. v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 194 (Tex. 2007) (quoting TEX. GOV'T CODE ANN. § 312.005 (West 2013)). Furthermore, "[a]bsent any identifiable reason for a substantive change to have been made in the statutory provision, or any extra-textual indication that one was intended, or any resulting change in industry practice, . . . the most reasonable construction of [the statute] is the same as its pre-[textual-change] predecessors." *Id.* at 195 (construing Texas Labor Code section 417.004). Such is the case here, and the instruction of the supreme court on construing a statute in these circumstances is exactly the opposite of the instruction the majority draws from the Scalia and Garner treatise and follows.

The statutory definition of the term "debt" in Tax Code Chapter 171 was repealed in 2008 during a recodification of the chapter. The amendments had nothing to do with section 171.255, which provides for the liability of officers of a corporation that has forfeited its charter for the corporation's debt. Instead, as the majority itself acknowledges, it was "part of a series of amendments designed to fund Texas schools by adopting new methods to calculate businesses' tax bills."

42

Slip Op. at 22 n.15 (citing Senate Research Center, Bill Analysis, Tex. H.B. 3, 79th Leg., 3d C.S. (2006)). The amendments to Chapter 171 were not intended to change the narrow definition of "debt" historically applied in section 171.255, a statute making directors and officers liable for corporate debts; they were intended to permit courts to apply a broader definition when calculating businesses' tax bills. The definition of "debt" formerly applied to all of Chapter 171 did not need to be replaced for purposes of construing section 171.255 because the definitions of the terms "debt," "created," and "incurred" were all well established as strictly construed with respect to section 171.255 and its predecessor long before the chapter's statutory definition of "debt" was enacted in 1987. The legislative history of the amendments did not indicate that any substantive change was intended with respect to the definition of "debt" for section 171.255 either when it was added or when it was repealed. Instead, it made clear that the amendments were intended for another purpose entirely.

The Texas Supreme Court has instructed that, "[a]bsent any identifiable reason for a substantive change to have been made in the statutory provision, . . . the most reasonable construction of [the statutory term] is the same as its pre-[amendment] predecessors." *See Energy Serv. Co.*, 236 S.W.3d at 195. The majority, however, disregards the readily "identifiable reasons" for repeal of the use of the narrow definition of debt applicable to section 171.255 for the entirety of

43

chapter 171—reasons which have nothing to do with changing the definition of "debt" for purposes of section 171.255. And it errs in concluding that it has license to rely on Scalia and Garner's *Reading Law* to redefine the term "debt" in section 171.255(a) in accordance with its own best lights, deeming the statutory definition to have fallen "irretrievably into oblivion." Slip Op. at 25. It should have adopted the historic construction of the term.

3.    **The majority's application of the rule of "strict construction" pre-1987, 1987–2008, and post-2008**

For the majority, if not for previous courts constrained by rule and precedent, the construction of section 171.255 changed dramatically from the time of *Curry*, when *Schwab*'s rule of lenity was incorporated into the relation-back doctrine, in 1987, when the narrow statutory definition of "debt" was enacted and the rule of lenity, with its broad interpretation of the terms of section 171.255, was pushed aside; and it changed dramatically again in 2008, when the narrow statutory definition of "debt" was repealed and fell "irretrievably into oblivion," permitting the restoration of the rule of lenity as the rule of construction of section 171.255.

The majority leads off its analysis of the pre-1987 construction of section 171.255 with *Schwab*, stating, "The rule of strict construction, in the sense of achieving a narrow application of a statute as a whole was first applied in a forfeiture case in *Schwab*." Slip Op. at 13. As shown above, this is incorrect. The majority then portrays *Schwab* as carrying forward under the rubric of "strict

44

construction"—by which it really means "the rule of lenity"—the rule of construction of ambiguous criminal statutes from the 1892 *Dwyer* case, stating that "'before any one should be punished, either in a criminal or a civil action, . . . the offense should be clearly defined' and 'doubt as to the intention of the legislature should be resolved in favor of the defendant.'" Slip Op. at 13–14 (quoting *Dwyer*, 19 S.W. at 471).

The majority then compounds the distorting effect of its reconstruction of the case law, characterizing the relation-back doctrine as set out in *Curry* as a further example of the rule of lenity (called, again, "strict construction"), claiming that, "'[s]trictly construing' Section 171.255, the [*Curry*] court held that the corporate officers were not personally liable because 'the obligations, circumstances, conduct, or transactions that create[d] or incur[red] the debt in question pre-existed the forfeiture,' even though the debt was, at that point, still unliquidated." Slip Op. at 14 (quoting *Curry*, 683 S.W. 2d at 112). What *Curry* actually said was that the relation-back doctrine applied as "*strictly construed and limited by the facts* of this case." 683 S.W.2d at 112 (emphasis added). The facts in *Curry* reflected that the debt on which the corporate defendant had been sued was for "a sum of money . . . due Curry Auto" under a contract executed in the regular course of business prior to forfeiture of the corporate charter, and "[n]o argument [was] made that a sum of money [was] due Curry Auto under a new,

45

different, separate, or independent agreement between the parties," and thus, "[n]o debt for which the corporate officers are liable is shown to have been 'created or incurred' after the forfeiture." *Id.* Thus, the majority's claim that *Curry* applied the rule of lenity and held that corporate officers are not liable for "unliquidated" obligations of a corporation created prior to forfeiture of the corporate charter is simply incorrect.

*Cain* explains this, but the majority repudiates *Cain*, stating in a footnote:

> We disagree with *Cain v. State*, 882 S.W.2d 515, 519 (Tex. App.—Austin 1994, no writ), which held that a strict construction of Section 171.255 requires courts to adopt the strictest possible definition of each statutory term. Indeed, the definitions given for "create" and "incur" in *Schwab v. Schlumberger Well Surveying Corp.*, 198 S.W.2d 79, 81 (Tex. 1946)—which are recited axiomatically in almost every Section 171.255 case—are remarkably broad.

Slip Op. at 11 n.8. Thus, it condemns *Cain* as being in opposition to *Curry*, which it believes "is consistent with strict construction" as it sees it—namely consistent with the rule of lenity. It then states, "Many intermediate appellate courts have followed *Curry*." Slip Op. at 15. Thus, while the bare statement that many courts have followed *Curry* is correct, it is profoundly misleading because it is based on an improper analysis of both the relation-back doctrine as propounded in *Curry* and *Cain* and the rule of strict construction as propounded in *Schwab*.

46

The majority's backwards understanding of the terms "strict construction" and "debt" and of the relation-back doctrine colors all the case law it addresses. As a result, the majority fails to discern the various types of debt distinguished by the case law construing section 171.255. It conflates those cases, and it attributes the holding in all of them to the rule of lenity under the rubric of "strict construction" or to its temporary suspension by the legislative imposition of a narrow definition of debt as a liquidated obligation between 1987 and 2008.

The majority opines that *Rogers* and other section 171.255 cases that followed *Curry* support its arguments construing section 171.255 in terms of the rule of lenity. *See* Slip Op. at 15–16. Actually, however, in cases like *Rogers* and *McKinney*, as in *Curry*, the courts' decisions gave effect to the lawful intentions of the parties to a preexisting contract, preserved rights that would otherwise have been lost, or afforded a remedy to a creditor of the corporation when none would otherwise exist; thus, in each of these cases, the relation-back doctrine as traditionally understood applied. *See Cain*, 882 S.W.2d at 518 (discussing relation-back doctrine and citing these cases); *McKinney*, 734 S.W.2d at 174–75 (holding that payments due under lease agreement incurred in regular course of business prior to forfeiture were created or incurred at time of execution of agreement, not at time when payments came due, and were not recoverable from corporate officers); *Rogers*, 696 S.W.2d at 674 (addressing losses due to post-

forfeiture breach of purchase contract entered into long before forfeiture); *Curry*, 683 S.W.2d at 112.

The majority cites *Jonnet* (which I have discussed above as explaining the rationale for the relation-back doctrine) only twice—both times citing the dissent. Slip Op. at 10–11, 18 (citing *Jonnet*, 877 S.W.2d at 537, 536 (Jones, J., dissenting)). And it claims *Skrepnek* (also discussed above) is consistent with its "rule of lenity" interpretation of "strict construction" and the relation-back doctrine and that it was decided on grounds that are "not an issue" in this case, without citing the similarity of the facts in *Skrepnek* to those in this case or its holding that corporate officers are liable for enforceable corporate obligations wrongfully incurred after forfeiture of a corporate charter. Slip Op. at 23–24.

The majority also cites, in support of its "rule of lenity" analysis, cases decided after the Legislature repealed Chapter 171's statutory definition of "debt" in 2008. These cases include *Beesley* (likewise discussed above). But the majority only says of *Beesley*, incorrectly, that "it does not address the issue we face" and that the analysis in that case "is consistent with applying the 'relation-back' doctrine." Slip Op. at 24–25.

The majority also includes *Rossman v. Bishop Colo. Retail Plaza, L.P.*, 455 S.W.3d 797 (Tex. App.—Dallas 2015, pet. denied), which it cites as support for the proposition that, "[w]ith that repeal, the 'relation-back' doctrine reemerged to

avoid individual liability for pre-forfeiture acts that lead to post-forfeiture judgments," although it points to no support for that claim in the *Rossman* opinion. Slip Op. at 21–22. *Rossman* actually stated that the 2008 repeal of the statutory definition of "debt" in Chapter 171 did not "impact the result" in the case, pointing out that the statutory definition of "debt" was "very similar to the one [in *Seay* and *Rogers*]," both pre-statutory cases. 455 S.W.3d at 804 (citing *Seay*, 677 S.W.2d at 23; *Rogers*, 696 S.W.2d at 676–77). The *Rossman* court then applied the relation-back doctrine to preserve a corporate director from liability arising out of corporate leases entered prior to forfeiture of the corporate charter. *Id.* (citing *Curry*, 683 S.W.2d at 112).

The majority finds only one exception to the restoration of the rule of lenity in construing section 171.255 following repeal of the statutory definition of debt in Chapter 171 of the Tax Code in 2008: *Taylor* (discussed above). *See* 316 S.W.3d at 867. The majority opines, correctly, that the Fourteenth Court of Appeals "concluded that the Legislature must have intended to overrule the use of the 'relation-back' doctrine in these Section 171.255 cases when it enacted such a narrow definition of a 'debt.'" Slip Op. at 21 (citing *Taylor*, 316 S.W.3d at 865.) But it further opines that the *facts* in *Taylor* (a 2010 case) occurred *before* the repeal of the narrow statutory definition in Chapter 171 in 2008, and it brushes aside the fact that the *Taylor* court *used* the narrow definition of debt in deciding

49

this section 171.255 case two years *after* repeal of the statutory definition. Thus, with *Taylor*'s definition of "debt" gone and the relation-back doctrine as it understands it restored, the majority is free to opine that, "with the repeal of the narrow definition that led to the *Taylor* result, courts have again concluded that a judgment-debt is created or incurred *when the conduct or contract occurs*, even if, at that point, the obligation remains unliquidated." Slip Op. at 23 (emphasis added).

It is true that *Taylor* rejected the relation-back doctrine, but what it actually *did* was to reject the *application* of the doctrine in that case to relieve a corporate officer of liability for acts of wrong-doing that occurred prior to forfeiture but were reduced to a money judgment after forfeiture. *See* 316 S.W.3d at 869 (concluding that "the relation-back doctrine should not be applied in this case" and overruling issue premised on its applicability). *Taylor* is thus exactly in line with all those courts that have strictly construed the term "debt" as used in section 171.255 to be an enforceable liquidated obligation and that have used the relation-back doctrine to save from liability for corporate debt those *non-culpable* corporate officers who, acting within the scope of their duties, created or incurred an unliquidated but legally enforceable obligation of the corporation prior to forfeiture of the corporate charter, while rejecting the use of the relation-back doctrine to save corporate

officers from personal liability for liquidated corporate obligations incurred after forfeiture because of wrongful acts of the corporation prior to forfeiture.

Finally, the majority cites, as support for its construction of section 171.255, *Willis v. BPMT, LLC*, 471 S.W.3d 27 (Tex. App.—Houston [1st Dist.] 2015, no pet.), a recent case from a panel of this Court, for "concluding that [the] debt on [a] lease agreement need not be for [a] sum certain, thus rejecting [the] repealed, narrow 'debt' definition in favor of [a] construction that favored [the] party facing [the] penalty." Slip Op. at 22. And it claims, "We are bound by these precedents from this Court." *Id.* at 10. Actually, while *Willis*'s reasoning is similar to that of the majority in this case, and is, therefore, in my view, incorrect, its application of the law nevertheless illustrates the appropriate application of the relation-back doctrine, hence the continuing vitality of that doctrine since its development in *Curry*.

*Willis* involved an action to recover unpaid rent from a corporation under a lease agreement entered in the ordinary course of business of the corporation well before forfeiture of its charter. 471 S.W.3d at 27–28. Thus, in *Willis*, the debt due on the lease was construed as a legally enforceable monetary obligation even if the exact amount was not determined until after forfeiture, and the debt related back to the date the lease was entered and could not be recovered from the corporation's officers and directors. *See id.*; *cf. Curry*, 683 S.W.2d at 112; *see also Cain*, 882

S.W.2d at 518–19 (construing *Curry* and its progeny). Thus, the panel correctly held that the corporate debt related back to the date of the lease and could not be recovered from the defendant officers and directors. *Willis* does nothing to support the majority's holding in this case that Batzri is not liable for the wrongful acts of negligent misrepresentation and fraud committed by 7677 against the Hovels prior to forfeiture of the corporate charter and reduced to a liquidated money judgment after forfeiture.

The majority, nevertheless, referring to the cases cited above and others, states, "All of these cases demonstrate application of the rule of strict construction [by which it actually means the rule of lenity] to protect a party facing a penalty through a construction of Section 171.255 in that party's favor." Slip Op. at 22. But this is not the case. Contrary to the majority's claims, Texas courts have never followed its conception of either the strict construction rule applicable to section 171.255 or the relation-back doctrine. And no other courts have held that all repealed statutes fall irretrievably into oblivion and that they are free to redefine the term "debt" in section 171.255 because the legislature repealed the statutory definition for that term in Chapter 171 in connection with broadening the tax base for businesses. Rather, the courts, almost without exception, have followed *Schwab*, *Curry*, and *Cain* as they really are. And, under that law, this case falls squarely within the scope of those cases in which the courts have held that the

relation-back doctrine does not apply and section 171.255 does apply—namely, those cases in which a tax, penalty, or money judgment is incurred by a corporation after forfeiture of its corporate charter as a result of wrongful acts of the corporation either before or after forfeiture. Following its own lead, the majority rejects this conclusion.

## F.    The Result of the Majority's Analysis of Section 171.255

The majority's reconstruction of the law interpreting section 171.255 leads it to conclude that 7677's debt to the Hovels "was created or incurred pre-forfeiture" and that Batzri is not liable for it. *Id.* at 27. Nevertheless, despite all it has done to justify its vision of the law, the majority still can find no support for its conclusion among published cases. Therefore, it relies on an unpublished 1998 case with no petition for review, *Ballard v. Quinn*, No. 14-97-01057-CV, 1998 WL 787558, at *2 (Tex. App.—Houston [14th Dist.] Sept. 10, 1998, no pet.) (mem. op., not designated for publication), as "persuasive" authority for its holding that Batzri is not liable to the Hovels under section 171.255 for 7677's judgment debt.

Rather than review the majority's recitation of *Ballard*, I merely note that—in a footnote several pages before setting out the "similarities between the Hovels' claim and the one pursued in *Ballard*"—the majority states, "We recognize, of course, that *Ballard* lacks precedential value. But," it continues, "as we explain, there are numerous similarities between the *Ballard* case and this one, and we

53

believe the analysis is persuasive." Slip Op. at 19 n.13. Thus, the majority effectively decides to disregard the clear statement in the Rules of Appellate Procedure that "opinions issued prior to the 2003 amendment [to Rule 47, governing publication of appellate opinions] . . . and affirmatively designated 'do not publish' should be considered 'unpublished' cases lacking precedential value," and to assign "persuasive" value to *Ballard* as its ultimate authority for its holding absolving Batzri from liability to the Hovels. *See* Slip Op. at 26–27; *see also* "Notes and Comments" following TEX. R. APP. P. 47.2.

Thus, disregarding Rule 47.2, the historically narrow construction of the terms of section 171.255, the rule of law governing statutes repealed as part of inapplicable amendments as expressed in *Energy Services Co.*, the purpose of section 171.255 as expressed in *Schwab*, and the historical development of the "strict construction" rule set out in *Schwab* and of the relation-back doctrine set out in *Curry* and explained in *Cain*, the majority finds *Ballard* controlling. It concludes,

> Applying the rule of strict construction and utilizing the Supreme Court's definition of the terms "created" and "incurred" from *Schwab*, we conclude that the debt evidenced by the default judgment obtained by the Hovels against 7677 was created or incurred pre-forfeiture at the time that the parties established their contractual and other obligations and, as such, Batzri is not individually liable for the entity's debt.

54

Slip Op. at 27.  Every part of this statement is legally unfounded.  Nevertheless, the majority takes its statement to its logical conclusion and then adds, "Finally, even if we were to consider public policy, we would reject the Hovels' contention that this interpretation is misguided."  *Id.* at 28. Rather, it claims, "public policy supports broadly construing 'created or incurred'" and, of course, "debt."  Slip Op. at 28.

## G.    The Consequences of Ignoring Reality

I find the majority's opinion and holding so divergent from the mainstream of legal construction and precedent, so diametrically opposed to the purpose of the statute and the public policy of this state as expressed in *Schwab* and reiterated in its progeny, and so far from accurately presenting the law that I have nothing to say in conclusion other than to summarize the departures of the majority opinion from precedent and to note the consequences of this decision.

First, the strict construction of "debt . . . created or incurred" in *Schwab* and all subsequent section 171.255 cases, and the development of the relation-back doctrine traceable to *Curry* and *Cain* have long enabled courts to draw the distinctions necessary in a section 171.255 case to characterize the "debt" for which a plaintiff seeks to hold an officer or director of a defunct corporation liable as either wrongfully or lawfully "created" or "incurred."  They enable courts to distinguish (1) enforceable financial obligations of a corporation created or

incurred by corporate officers acting within the scope of their duties before forfeiture of a corporate charter, for which corporate officers may not be held personally liable under section 171.255 and the relation-back doctrine, even if the obligations are not liquidated until after forfeiture and (2) enforceable liquidated financial obligations of the corporation created or incurred after forfeiture of the corporate charter as a result of wrongful acts of the corporation that occurred either before or after forfeiture, for which section 171.255 makes culpable officers and directors of the corporation personally liable. Thus, they enable courts to determine whether or not their application of the statute will "prevent wrongful acts of culpable officers of a corporation . . . for the protection of the public and particularly those dealing with the corporation." *See Schwab*, 198 S.W.2d at 81– 82 (stating purpose of statute).

Correctly construed in accordance with its purpose, section 171.255 transfers liability for a liquidated obligation incurred by a corporation after forfeiture of its charter as a result of wrongful acts of the corporation to the corporation's officers and directors with knowledge of the wrongful acts, but it does not transfer personal liability to corporate officers and directors for liquidated obligations incurred after forfeiture as a result of enforceable obligations of the corporation created by corporate officers acting within the scope of their duties prior to forfeiture. *See* TEX. TAX CODE ANN. § 171.255; *Schwab*, 198 S.W.2d at 81. Under that law,

liability for the judgment debt incurred by 7677 in favor of the Hovels after forfeiture of its charter for its acts of fraud and negligent misrepresentation prior to forfeiture should be transferred to Batzri, 7677's only officer and director.

On the majority's reading of section 171.255, however, if a corporation is held liable in a money judgment incurred after forfeiture of its corporate charter for its wrongful acts, the judgment cannot be enforced against the principals and officers of the corporation because the debt was "created or incurred" when the bad acts took place—prior to forfeiture. This is the exact opposite of the intent of section 171.255, which is to prevent the principals of a corporation from using forfeiture of a corporate charter to avoid liability for wrongful acts of the corporation, as Batzri seeks to do here. *See Cain*, 882 S.W.2d at 519–20 (in which defendant likewise "contend[ed] for a liberally expanded interpretation of the words 'debt' and 'create,'" which court rejected as incompatible with all prior case law, starting with *Schwab*, and with purpose of statute). And it results in the exactly opposite conclusion from established law.

Second, the distinctions made by the case law through the application of the "strict construction" rule of *Schwab* and the relation-back doctrine of *Curry* allow courts to harmonize the subsections of section 171.255 to effectuate the purpose of the statute. Under partnership law, incorporated into subsection 171.255(b), partners in a partnership are generally liable for the debts of the partnership. *See*

TEX. TAX CODE ANN. § 171.255(b); *U.S. Rest. Props.*, 104 S.W.3d at 293 (partners are jointly and severally liable for debts of general partnership). Under corporate law, corporate officers are protected by the corporate shield afforded by the corporate charter from personal liability for debts of the corporation created or incurred in the exercise of their duties, and are no longer protected once the shield is forfeited. *See* TEX. TAX CODE ANN. § 171.255(a); *Portlock*, 852 S.W.2d at 582. But a corporate officer may be held individually liable for the tortious conduct of a corporation in which he knowingly participates or of which has knowledge. TEX. TAX CODE ANN. § 171.255(a); *Leyendecker & Assocs.*, 683 S.W.2d at 375. The three subsections of section 171.255, read together and harmonized, as required by Texas law, provide that officers and directors of a corporation that has forfeited its charter may be held jointly and severally liable for the liquidated debts of the corporation incurred after the corporate charter and corporate shield are forfeited, but only insofar as they had knowledge of or participated in wrongful acts of the corporation giving rise to the debt.

The majority, however, ignores subsections 171.255(b) and (c), which provide that only a director or officer of a corporation with culpable knowledge of a corporate debt "created or incurred" after forfeiture may be held liable under section 171.255 "in the same manner and to the same extent as if the director or officer were a partner and the corporation were a partnership." *See* TEX. TAX

CODE ANN. § 171.255(b), (c). And it ignores the strict construction rule that requires that the terms of section 171.255 be narrowly construed so that corporate officers are held personally liable only for those debts of the corporation incurred after forfeiture of the corporate charter as a result of wrongful acts of the corporation of which they had knowledge. It simply writes subsections 171.255(b) and (c) out of the statute in favor of applying the rule of lenity it has chosen as its own rule of construction, just as it fails to harmonize the terms of the statute, in violation of the genuinely applicable canon of construction requiring that all parts of a statute be rendered meaningful by a court's construction and application of it. *See* TEX. GOV'T CODE ANN. § 311.021.

The majority holds that corporate officers and directors may *not* be held liable for wrongful acts of the corporation of which they have knowledge that were committed prior to forfeiture because the "debt" was created when wrongful acts— such as fraud or misrepresentation—occurred and *not* when an enforceable legal obligation was incurred by the corporation after forfeiture as a result of those acts. Thus, under the majority's construction of section 171.255, a corporate officer cannot be held personally liable for the fraud or misrepresentation after forfeiture of the corporate charter, even though a partner would be personally liable for such acts committed by a partnership and even though the purpose of the statute requires that all terms and parts of the statute be given effect and harmonized.

Third, the majority substitutes an inapplicable and essentially obsolete canon of construction of ambiguous criminal statutes—the rule of lenity—for the rule of strict construction promulgated in *Schwab* for construing this unambiguous civil statute, in contradistinction to all prior case law. And it declares that it is not bound by any law in defining "debt" in section 171.255, contrary to Texas Supreme Court instruction. These actions result in the substitution of an unprecedented and extremely broad redefinition of the term "debt" in section 171.255 as including unliquidated potential obligations of a corporation rather than the narrow definition of "debt" as an enforceable liquidated obligation of the corporation used historically, and they undermine the rationale for the development of the relation-back doctrine.

In sum, the majority opinion deprives both this Court and any future court that adopts its redefinition of the operative terms in section 171.255 of all the precedential case law strictly construing a "debt" for purposes of section 171.255 as a legally enforceable obligation to pay money. It deprives the Court of precedential case law relying upon the relation-back doctrine to distinguish among (1) debts lawfully created or incurred as enforceable obligations by a corporation that subsequently forfeits its charter, as to which no personal liability may be imposed on corporate officers and directors after forfeiture; (2) new debts incurred or created after forfeiture by officers with knowledge of the post-forfeiture debts,

for which the officers or directors may be held personally liable; and (3) judgment debts or penalties incurred by a corporation for wrongful acts of the corporation that occurred prior to forfeiture but were not reduced to a legally enforceable obligation until after forfeiture, for which officers and directors with knowledge of the acts can be held personally liable. It creates division between this Court and all others. And, in so doing, it destroys the consistency and reliability of the law.

The consequences of the majority's ignoring legal reality are both perverse and severe. The majority opinion, therefore, in my view, has the potential to do much damage to established law.

**Conclusion**

I conclude that the conditions of Texas Tax Code section 171.255 for finding a corporate officer or director personally liable for the debts of a corporation that has forfeited its corporate charter were met in this case. Therefore, I would reverse the summary judgment of the trial court in favor of Batzri, and I would render the judgment the trial court should have rendered on the Hovels' summary judgment motion, holding Batzri personally liable for the money judgment entered by the trial court against 7677 in favor of the Hovels.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Brown.

Keyes, J., dissenting.